628 A.2d 809

IN THE MATTER OF POLICE CHIEF (M2010P)
SOUTH ORANGE VILLAGE.

Superior Court of New Jersey
Appellate Division

Argued April 20, 1993—Decided July 21, 1993.

Before ANTELL, DREIER, SKILLMAN, JJ.

*David Solomon* argued the cause for appellants South Orange PBA Local 12 and South Orange Superior Officers Association (*Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano,* attorneys; *Mr. Solomon* and *Ronnie Gardstein,* on the brief).

*Lewis A. Scheindlin,* Deputy Attorney General argued the cause for respondent Merit System Board (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel, *Mr. Scheindlin,* on the brief).

*Stephen E. Trimboli* argued the cause for respondent Township of South Orange Village (*Genova Burns,* attorney; *Mr. Trimboli,* of counsel and on the brief and *Joseph Licata,* on the brief).

*Paul L. Kleinbaum* argued the cause *amicus curiae* for New Jersey State PBA (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Mr. Kleinbaum,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

South Orange PBA Local 12 and the South Orange Police Superior Officers Association appeal from a decision of the Merit System Board approving South Orange's resort to an open competitive examination rather than a promotional examination to fill the position of Police Chief. They also object to the creation of a separate promotional list limited to South Orange residents. We have granted New Jersey State PBA's motion to intervene as *amicus curiae* in this matter.

The Township of South Orange Village operated without a Police Chief for many years. From April 1, 1989 until July 1, 1992, South Orange appointed a Village resident, Steven Palamara, a police captain on leave from Irvington Police Department, to the unclassified position of civilian Police Director. As police director, Palamara ran the day-to-day affairs of the police department and performed many of the duties of a police chief. This caused two police unions, South Orange PBA Local 12 and South Orange Police Superior Officer's Association, to complain to the Attorney General's Office. Specifically, the unions claimed that Palamara was a civilian who was running the police department and unduly interfering with uniformed police officers' performance of their duties. The Attorney General's Office agreed, and ruled that Palamara was ineligible to receive pension credits. As a result, to protect his pension, Palamara returned to his position as a police captain in the Irvington Police Department.

Shortly thereafter, South Orange created the position of Police Chief. On May 27, 1992, South Orange submitted a letter to the New Jersey State Department of Personnel requesting that an open competitive examination, limited to South Orange residents, be held to fill the police chief position. South Orange claimed that an open competitive examination, as opposed to a promotional examination, was appropriate because the South Orange Police Department "has *no* Deputy Chief position within its organization-

al structure and currently there are only two Captains serving within the Police Force and established within our organizational structure."

By letter dated July 2, 1992, the unions objected to the open competitive examination and to the residency limitation. They alleged that the type of examination and the residential limitation were designed to retain Palamara's services by preventing certain qualified superior officers currently employed by South Orange, specifically a nonresident lieutenant who had strenuously advanced the Superior Officers' position, from taking the examination.

The Department of Personnel approved South Orange's request to hold an open competitive examination limited to South Orange residents to fill the position of Police Chief.[1] The unions then appealed the Department's determination to the Merit System Board. In a final decision dated November 12, 1992, the Board affirmed the Department's determination. After an unsuccessful motion for reconsideration, the unions appealed to this court.[2]

We must determine whether the Board's failure to direct a competitive examination open to both captains and lieutenants, violated the Civil Service Act, the Board's own regulations or other principles of law. Where the Commission's actions "violated legislative policies expressed or implicit in the civil service act," it cannot be sustained. *Campbell v. Department of Civil Serv.*, 39

---

[1] Four applicants, including Palamara, as well as two lieutenants and one captain, who were residents of and employed by South Orange, later took the open competitive examination. On February 4, 1993, the Department of Personnel promulgated the eligibility list resulting from the examination. Palamara placed first with a score of 97.

[2] The unions moved to stay the issuance of a certified list of eligible police chief candidates pending the disposition of the appeal. We denied the motion insofar as it sought to enjoin the Department of Personnel from certifying a list of eligibles. We granted the motion insofar as it sought to enjoin South Orange from making a permanent appointment from that list.

*N.J.* 556, 562, 189 *A.*2d 712 (1963).[3]   Applying this stringent review standard, we find that the Board erred in setting the standard for promotional examinations.

We start our analysis with certain basic principles in mind.   One such principle is the constitutional mandate that "[a]ppointments and promotions in the civil service of the State . . . shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable shall be competitive. . . ." *N.J. Const.* art. VII, § 1, ¶ 2.[4]   Thus, the position of police chief in this case could be constitutionally filled either by a promotional examination, *i.e.,* a "test open to permanent employees who meet the prescribed requirements for admission," *N.J.A.C.* 4A:1–1.3, or by an open competitive examination, which is a "test open to members of the public who meet the prescribed requirements for admission." *N.J.A.C.* 4A:1–1.3.

*N.J.S.A.* 11A:4–2 expresses strong preferences for promotional examinations.   Open competitive as opposed to promotional examinations are to be employed *only* where there are "fewer than three qualified permanent employees in appropriate lower titles in the unit scope. . . ." *N.J.A.C.* 4A:4–2.3(a)2.   The unit scope is the defined part of the agency, here the police department, used to

---

[3] The Civil Service Act establishes the Department of Personnel.   The Department principally consists of the Commissioner of Personnel and his or her subordinates, and the Merit System Board (replacing the former Civil Service Commission).   The Board acts as the final appellate authority within the Civil Service system, *N.J.S.A.* 11A:2–6b, adopts appropriate regulations to implement the Civil Service Act, *N.J.S.A.* 11A:2–6d, and interprets the operation of the Civil Service Act for the benefit of the various public bodies and entities within this State.   *N.J.S.A.* 11A:2–6e.

[4] This constitutional provision was implemented first through Title 11 and now Title 11A of the New Jersey Statutes.   The statutes were designed to "remove employment in the classified service from political control, partisanship and personal favoritism, and to maintain stability and continuity in ordinary public employment." *Connors v. City of Bayonne,* 36 *N.J.Super.* 390, 396, 116 *A.*2d 48 (App.Div.), *certif. denied,* 19 *N.J.* 362, 117 *A.*2d 203 (1955).

determine eligibility for promotional examination. *N.J.A.C.* 4A:1–1.3.

In *N.J.A.C.* 4A:4–2.3, the Board with great specificity has set forth the standards for departing from the preferred promotional examinations and employing an open competitive examination. Subparagraph (a) provides:

(a) Vacancies shall be filled by promotional examination unless the Commissioner determines that it is in the best interest of the career service to hold an open competitive examination. The determination to announce an open competitive examination shall be based on at least one of the following conditions:

1. The vacancy is in an entrance level title;

2. There are fewer than three qualified permanent employees in appropriate lower titles in the unit scope (*See N.J.A.C.* 4A:1–1.3 for definition of unit scope);

3. If more than one vacancy, the total number of qualified permanent employees in appropriate lower titles in the unit scope exceed by fewer than three the total number of vacancies.

4. A list resulting from a promotional examination will be exhausted before all present or anticipated vacancies are filled; or

5. The title requires special, technical or professional training or qualifications which are not required in lower titles.

The first sentence states clearly that the Commissioner (not the municipality) must determine "that it is in the best interest of the career service to hold an open competitive examination" in order to depart from the preferred method of promotional examination. This determination must be based upon one of the five criteria. All parties agree that only subsection 2 is applicable.

The second criterion requires a finding that there "are fewer than three qualified permanent employees in *appropriate lower titles* in the unit scope." (Emphasis added). The phrase, "appropriate lower titles" (and we emphasize that the Board used the plural "titles") refers to *N.J.A.C.* 4A:4–2.4.

(a) If a title which is the subject of a promotional examination is part of a title series, the examination shall be open to one of the following:

1. The next lower or next two lower in-series titles; or

2. All applicants in the unit scope who meet the open competitive requirements and all applicants in the next lower or next two lower in-series titles.

(b) The title scope described in (a)2 above may be used when the appointing authority requests a wider title scope or provisionally promotes an employee who does not have permanent status in an in-series title.

There is no question that the chief of police title is part of a title series. In South Orange this series starts with the title of patrol officer and culminates with chief of police. The ordinance specified the following ranks:

(a) Chief of Police.
(b) Captains of Police.
(c) Lieutenants of Police.
(d) Sergeants of Police.
(e) Patrol officers.[5]

In this case, a list of three clearly could have been secured from the next two "lower titles" unless the lieutenant title was excluded because it was not "appropriate."

How then should the Merit System Board have determined whether to open the examination to the next lower title or the next two lower titles? [6] The first factor obviously would be whether a sufficient list can be created from the next lower title. If there were numerous captains, all eligible to take the examination, the

---

[5] In the Village's initial letter to the Department of Personnel requesting the open competitive examination, the Village correctly stated that it "has *no* Deputy Chief position within its organizational structure and currently there are only two captains serving within the Police Force." Although the counsel for the Merit System Board eschews any misunderstanding of this letter by the Merit System Board, the Board's findings apparently viewed the Deputy Chief's rank as one existing in the municipality, but without any incumbents. The Board stated:

> There are no Deputy Police Chiefs in South Orange Village and only two Police captains would have been eligible for promotional examination for Police Chief.

[6] Item five could theoretically have justified a factual finding by the Commissioner that applicants should not be drawn from the second lower title of lieutenant. The Commissioner would have been required to find that there was some "special, technical or professional training or qualifications" required in the chief's position that were present in the rank of captain, but not in the rank of lieutenant. No one, however, has made such an argument, and in fact the eventual examination was opened to lieutenants.

Commissioner or Board might well determine not to open the test to lieutenants, thereby preserving the usual promotional sequence from lieutenant to captain to chief. If no list could reasonably be established in the next lower title, the second lower title should have been used.[7]

The sole basis for the Board's decision was that the Department of Personnel would not open the examination to police lieutenants "unless the appointing authority appointed a provisional in that title or specifically requested that the examination be opened to that title." This is not what was contemplated by the statute and Board's own regulations, although it is in conformity with a Division of County and Municipal Government Services "Operating Procedure."

In its brief and at oral argument, counsel for the Board argued that the Board had an unwritten "general policy" of applying *N.J.A.C.* 4A:4–2.4(a) "to limit police promotional tests to the title directly below the title for which the test is to be given, unless the employer requests that the test be opened to the next lower title or has appointed a provisional employee in that lower title." After oral argument, and at our request, we were given an unpublished intra-agency Division "Operating Procedure" from the Division of County and Municipal Government Services setting forth the procedure employed in this case. The procedure provides:

Promotion examinations for Paramilitary Uniformed Law Enforcement and Fire Fighting positions are to be open to the *next lower* in series title *used in the jurisdiction* unless the authority, 1) appoint [sic] a PA in a lower title, 2) for valid reasons, specifically requests that the examination be opened broader.

In such instances, the examination is to be opened down to the level of the PA or to the level requested by the authorities (and all intervening titles) *provided* that the title is not more than two levels below the title for which the examination is being announced. (Levels are to be based on the titles used in the jurisdiction). Instances that exceed the limit are to be referred to the Director's Office for

---

[7] The municipality, in its brief, attempts to distinguish its prior promotional examination for police chief several years before, which had been open to both captains and lieutenants, without objection from the Department of Civil Service.

consideration of either 1) use of open competitive requirements for the promotion, or 2) announcement of open competitive rather than promotion examination.

The "procedure" then presents an example which parallels this case, followed by two "notes." They state:

*Note 1:* The request to broaden scope may be approved even though there are *sufficient* eligibles in the next lower title to assure a complete certification.

*Note 2:* Among the reasons to be considered valid for broadening scope are:

a) authorities indicate that the number of employees in the next lower title are *insufficient* to fill all vacancies.

b) authorities indicate that they wish to broaden competition to better assure obtaining the best qualified eligibles.

The procedure concludes with a requirement for time in grade, not here relevant.

This unpublished internal procedure appears to run directly counter to the criteria for departing from the preferred promotional examinations and instituting an open competitive examination. *N.J.A.C.* 4A:4–2.3(a)(2). The practical effect of such a procedure in any police force with only two captains would be to open every promotional test for chief of police to outsiders. Similarly, such tests for any promotion in any departments would be opened if the table of organization provided for only two deputy chiefs, captains, or lieutenants. Where this policy is coupled with a residency requirement in the stated exam qualifications, most promotional expectations could be thwarted, raising the specter of political favoritism and manipulation of the system.

The "procedure" also would violate the rule-making requirements of the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.* An administrative "rule" is defined in *N.J.S.A.* 52:14B–2(e):

"Administrative rule" or "rule," when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.

The adoption of such a "rule" is subject to strict procedural standards. *N.J.S.A.* 52:14B–4. The issue of whether an agency policy is a "rule" is governed by *Metromedia, Inc. v. Director,*

*Div. of Taxation,* 97 *N.J.* 313, 331–332, 478 *A.*2d 742 (1984). There the Court stated clearly:

[A]n agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively;· (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.

Unlike the issue in *Metromedia,* however, the issue in this case is not a close balancing of rule-making and adjudication. The general policy described by the Division of County and Municipal Government Services is clearly rule-making. The "procedure" had the same broad application as the "determination" considered in *Metromedia:*

The challenged determination clearly is one of general applicability to the regulated class. It is essentially prospective in nature, notwithstanding its attempted application to the taxpayer in this case. It was intended to have continuing effect.... The Director admitted at trial that "[a]ll broadcasters * * * who are in the same predicament or situation as [Metromedia] would be subject to the revision." There is no question, therefore, that the determination is intended to be a rule of unvarying application to all similar cases.

[*Id.* at 334, 478 *A.*2d 742.]

The Board's argument that it could establish and apply an unapproved internal policy of general application, thereby thwarting the expected rights of an employee to take a promotional examination, flies in the face of *Metromedia.* For this reason also, the Board's decision cannot stand.

The unions next contest the closing of the examination to nonresidents. They claim that the decision to limit the examination to South Orange residents was contrary to *N.J.S.A.* 40A:14–

122.1, –122.2. Since we have concluded that the position must be filled by a promotional appointment, for which there may be no residency requirement, these statutes need not be analyzed. *See N.J.S.A.* 40A:14–123.1a.d.

In sum, the Board mistakenly interpreted both the statute and its own regulations and followed an internal Division Operating Procedure which permitted the limitation of the examination to police captains merely at the request of the municipality and without making explicit factual determinations required by the Civil Service regulations. Such findings could not be made on the facts of the case before us. If this determination was made under the unpublished Operating Procedure, then the policy also may not be applied because it violates the Administrative Procedure Act and *Metromedia, Inc. v. Director, Div. of Taxation.*

The Board shall forthwith order a new promotional examination for Police Chief, open to present captains and lieutenants in the South Orange Police Department.