868 A.2d 364 (2005)
375 N.J. Super. 463
Juliana HUSZAR, Plaintiff-Appellant,
v.
GREATE BAY HOTEL & CASINO, INC.[1] and Schindler Elevator Corporation, Successor in Business to Millar Elevator Service Company, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 2004.
Decided March 10, 2005.
*366 Richard P. Rinaldo argued the cause for appellant (Rinaldo and Rinaldo, attorneys; Matthew T. Rinaldo, Elizabeth, on the brief).
John W. Reinman, Jersey City, argued the cause for respondent Schindler Elevator Corporation (Lamb, Kretzer, Reinman & Roselle, attorneys; Mr. Reinman, on the brief).
Dominic V. Caruso, Clifton, argued the cause for respondent Greate Bay Hotel & Casino and joins in the brief of respondent Schindler Elevator Corporation.
Before Judges PETRELLA, PARKER and YANNOTTI.
The opinion of the court was delivered by
PARKER, J.A.D.
Plaintiff appeals from dismissal of the complaint for her failure to conduct any meaningful discovery or obtain an expert's report within the 300-day discovery period required under R. 4:24-1(a). Plaintiff's motion to extend the discovery period was denied on the ground that she failed to show "good cause" as required by R. 4:24-1(c).
Plaintiff, an eighty-year-old woman, was visiting the Sands Hotel and Casino (Sands)[2] in Atlantic City with her daughter on Mother's Day in 2000. After parking in the hotel's garage, the women were taking an elevator to the hotel when the door of the elevator closed on plaintiff, knocking her to the floor. She was taken to a hospital by ambulance and treated for head and knee injuries. The elevators were maintained and serviced by the Schindler Elevator Corporation (Schindler), successor to defendant Millar Elevator Service Company.
Plaintiff requested certain preliminary information from defendant. Plaintiff's counsel submitted a certification stating that "plaintiff was supplied with an incorrect elevator number/designation by the Defendants in the original Discovery materials of accident reports and records which were received on August 9, 2002," but plaintiff did not even learn that the information was incorrect until after the 300-day discovery period had expired. Plaintiff failed to pursue any other discovery during the 300-day period. Indeed, plaintiff did not even retain an elevator expert until after expiration of the 300-day period.
Plaintiff's counsel asserts that
sometime prior to February 19, 2003, which was the discovery end date, I had contacted the Civil Division office and requested a sixty day extension of discovery. For some reason, the discovery end date was not extended for the sixty day period. This request was made in accord with the Court's Best Practices Rule 4:24-1(c). This would have given Plaintiff until approximately April 19, 2003 in which to finalize our discovery.
Notwithstanding counsel's assertion, it is undisputed that he failed to confirm "in writing to all parties" his telephone request for the sixty-day extension as required by R. 4:24-1(c). Moreover, there is nothing in the record to indicate that plaintiff's counsel made any attempt to follow *367 up on the request or to even determine whether the extension was granted.
The discovery period ended on February 19, 2003. More than three weeks later, on March 12, 2003, defendant deposed plaintiff and her daughter. Plaintiff's counsel claims that he learned at the deposition of his own client that the discovery material provided by defendant was incomplete "in that the elevator number which was indicated as 3B was not in accordance with the State Inspection reports, as provided." This assertion is in direct contradiction to counsel's prior assertion that defendant's failure to provide the correct information was the reason he could not complete discovery within the 300-day period.
In late March or early April 2003, after plaintiff's deposition and at least a month after the discovery period had expired, plaintiff hired an elevator operations expert to prepare a report concerning elevator 3B at the Sands Hotel. The expert certified that he inspected the elevator "sometime in March or early April" but was "unable to ascertain or obtain any of the State Records due to the fact that there was no indication on the elevator what the corresponding State inspection number was." According to the expert, he was unable to prepare a report because he lacked access to the "correct elevator state designation" and could not obtain the inspection records kept by the State.
On April 16, 2003, almost two months after the discovery period ended, plaintiff finally propounded a notice to produce on defendants seeking a wide variety of documents concerning the elevator. It was not until June 6, 2003, however, three months after plaintiff's deposition, that plaintiff requested the correct elevator number or designation from defendants. In June 2003, Schindler sent plaintiff certain "documents pertaining to the elevator in question," but plaintiff claims that those documents did not include the State's numerical designation for the elevator.
On July 16, 2003, Schindler's counsel wrote to plaintiff stating that Schindler was not going to comply with any further discovery requests. Plaintiff claims that it was this refusal to comply with further discovery that prompted her to move for an extension of the discovery period, almost five months after discovery had expired and three months after expiration of the sixty-day extension purportedly requested by plaintiff's counsel.[3] Plaintiff was still blaming defendants for failing to provide the correct elevator number/designation for her delay in conducting discovery when, in fact, plaintiff did not even know the information was incomplete until her deposition after the 300-day period expired. Moreover, if plaintiff had retained an expert timely, the expert could have sought the correct information well before the 300-day period expired.
On July 25, 2003, plaintiff's motion to extend discovery was denied with the judge noting that under R. 4:24-1(c), "[e]xceptional circumstances are required.... Arbitration is already scheduled." Since no extension had been granted before the 300-day period expired, the court denied the motion.
On August 20, 2003, plaintiff moved for reconsideration of the July 25, 2003 order. *368 Plaintiff's counsel continued to complain about his efforts to obtain the correct elevator number so that plaintiff's expert could prepare a report. He claimed that defendants' failure to provide the correct elevator number/designation qualified as an exceptional circumstance under R. 4:24-1(c).
Relying on the four-factor test articulated in Vitti v. Brown, 359 N.J.Super. 40, 51, 818 A.2d 384 (Law Div.2003), the judge denied the motion for reconsideration on September 12, 2003, on the grounds that plaintiff (1) had not made effective use of the 300 days permitted under R. 4:24-1(a); (2) plaintiff did not require the State's elevator number in order for her expert to prepare an adequate report; (3) plaintiff had not provided an explanation for counsel's failure to request an extension of time for discovery within the original discovery period;[4] and (4) plaintiff had not shown that the discovery period extension was required because of circumstances "clearly beyond the control of the attorney and litigants seeking the extension." On September 29, 2003, plaintiff moved for leave to appeal the July 25 and September 12, 2003 orders and to supplement the record with the affidavit of plaintiff's proposed expert and counsel's certification. We denied both motions on October 20, 2003.
In the meantime, the case was presented for arbitration on September 18, 2003, and the arbitrator found no liability. Plaintiff filed a request for a trial de novo on October 14, 2003. On February 3, 2004, the case was called for trial. At that point, Schindler moved to dismiss the complaint based upon plaintiff's failure to support her claims with a report from an elevator operations expert. The judge noted that in a case such as this, plaintiff is required to support her claims with expert testimony. The judge observed that "[t]his is one year after the discovery end date has expired and you still haven't provided an expert's report," even though "an expert is clearly needed under these circumstances." Defendant's motion was granted and the complaint was dismissed.
In this appeal, plaintiff argues that the trial court erred (1) in entering the July 25, 2003 order denying her request to extend discovery; (2) in entering the September 12, 2003 order denying her motion for reconsideration; (3) in entering the February 17, 2004 order granting defendant's motion to dismiss; (4) in refusing to allow plaintiff to proceed to trial with the testimony of defendant's elevator technician; and (5) in failing to make findings of fact and conclusions of law as required by R. 1:7-4(a).

I
In her first two points, plaintiff essentially argues that the extension of time requested in July 2003, five months after the discovery end date, should have been granted because she proved "exceptional circumstances," as required under R. 4:24-1(c). Alternatively, she contends that she "substantially complied" with the dictates of R. 4:24-1(c) and that defendants either should have been estopped from opposing her motion for an extension because they "acquiesced in further discovery long after the original end date" or that they should have been barred from such opposition under the doctrine of laches. We find no merit in these contentions.
Our standard of review is limited to a determination of whether the trial court mistakenly exercised its discretion in denying *369 plaintiff's motion for an extension of the discovery period under R. 4:24-1(c). Tucci v. Tropicana Casino and Resort, Inc., 364 N.J.Super. 48, 51, 834 A.2d 448 (App.Div.2003).
Rule 4:24-1(c) is one of several rules amended in September 2000 as part of the "Best Practices" initiative. Vitti, supra, 359 N.J.Super. at 43, 818 A.2d 384. "Best practices arose, in significant part, to address the evident delay in trying cases caused by litigants' failures to complete discovery in a timely fashion." Zadigan v. Cole, 369 N.J.Super. 123, 130, 848 A.2d 73 (Law Div.2004). To "address this paramount concern," changes in the discovery rules, including R. 4:24-1(c), were promulgated "to ensure an early exchange of information to which the parties are entitled; to relieve an aggrieved party from the burden of having to seek court intervention to compel discovery to which it ... [is] entitled; and, to establish consequences for failure to provide discovery as the ... rules require[ ]." Id. at 130-31, 848 A.2d 73.
Because the complaint was filed on April 4, 2002, well after the Best Practices Rule amendments were adopted in September 2000, the case is clearly subject to the Track II discovery deadline of 300 days. R. 4:24-1(a). In accordance with the Best Practices amendments, the discovery period may be extended by consent of the parties or by court order "for good cause shown" but only if the application for extension of time is made before the discovery period has expired. R. 4:24-1(c). The rule further provides that "[a]bsent exceptional circumstances, no extension of the discovery period may be permitted after an arbitration or trial date is fixed." (Emphasis added). Indeed, a trial or arbitration date is critical to the trial judge's determination of whether to grant an extension of the discovery period under R. 4:24-1(c). Ponden v. Ponden, 374 N.J.Super. 1, 9, 863 A.2d 366 (App.Div.2004) (stating "that the absence of an arbitration or trial date at the time of the trial judge's ruling is of critical significance in a court's exercise of its discretion to extend discovery.").
In this case, the discovery period expired on February 19, 2003, notwithstanding counsel's claim that he made a telephone request for an extension before the time expired. Plaintiff did not move for an extension until July 25, 2003. The arbitration hearing was already scheduled for September 18, 2003. Plaintiff, therefore, was required to show "exceptional circumstances" to obtain an extension. R. 4:24-1(c).
For purposes of ... showing ... "exceptional circumstances," there generally must be some showing that the circumstances presented were clearly beyond the control of the attorney and the litigant seeking an extension of time. An excessive work load, recurring problems with staff, a desire to avoid expense associated with discovery, or any delays arising out of extended efforts to resolve [the] matter through negotiations generally will not be sufficient to justify an extension.
[Zadigan, supra, 369 N.J.Super. at 132 n. 8, 848 A.2d 73.]
Factors to be considered in determining whether a request to extend the time for discovery should be granted after the matter has been scheduled for arbitration or trial include:
First, as with motions considered within the original discovery period, any application should address the reasons why discovery has not been completed within [the] time [allotted] and counsel's diligence in pursuing *370 discovery during that time. Any attorney requesting additional time for discovery should establish that he or she did make effective use of the time permitted under the rules. A failure to pursue discovery promptly, within the time permitted, would normally be fatal to such a request. Second, there should be some showing that the additional discovery or disclosure sought is essential, that is that the matter simply could not proceed without the discovery at issue or that the litigant in question would suffer some truly substantial prejudice. Third, there must be some explanation for counsel's failure to request an extension of the time for discovery within the original discovery period. Finally, there generally must be some showing that the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Vitti, supra, 359 N.J.Super. at 51, 818 A.2d 384 (emphasis added).]
We are satisfied that the motion judge did not abuse his discretion in applying the Vitti factors when he denied plaintiff's motion to extend the discovery period and her subsequent motion for reconsideration. Plaintiff's counsel gave no excuse other than defendant's failure to provide correct information identifying the elevator in which plaintiff was injured. But plaintiff did not even discover that deficit until plaintiff's deposition after the 300-day period had expired. Moreover, that excuse does not explain why plaintiff failed to retain an expert or pursue other discovery during the 300-day period.
Plaintiff argues that her case is similar to the facts set forth in Tucci. There, "plaintiffs were not satisfied that they had received all the available elevator maintenance records, which they then sought by letter to counsel. Those records were apparently not made available to them until the mandatory non-binding arbitration proceeding held pursuant to R. 4:21A...." Tucci, supra, 364 N.J.Super. at 50, 834 A.2d 448. In Tucci, as here, "plaintiffs asserted that their elevator expert could not begin his work until all the records had been made available to him...." Id. at 50-51, 834 A.2d 448. Tucci's expert report was delivered thirty-nine days after its due date. Ibid. Significantly, Tucci's counsel was unable to attend to the expert report "by reason of his mother's terminal illness and death" which "provided good cause, if not extraordinary circumstances, mandating a reasonable modicum of judicial indulgence." Id. at 54, 834 A.2d 448. No such exigent circumstances are present in this case. Here, the delay rests squarely on plaintiff's counsel's failure to retain an expert and pursue discovery in a timely manner.

II
In Points II and III, plaintiff argues that the trial judge erred in dismissing the complaint because she failed to provide an expert report, and that she should have been permitted to rely on defendant's elevator technician to support her claims.
When defendants moved to dismiss the complaint based upon plaintiff's failure to produce an expert report, plaintiff indicated that her cause of action was based upon the res ipsa loquitur doctrine. The trial judge noted, however, that in a complex instrumentality case such as this, plaintiff must have an expert to support her res ipsa loquitur claim.
We first address plaintiff's "res ipsa" argument. "Res ipsa loquitur is neither a cause of action nor a theory of liability; it is a method of circumstantially proving that a product was defective." *371 Myrlak v. Port Auth. of N.Y. and N.J., 302 N.J.Super. 1, 12, 694 A.2d 575 (App.Div.1997), aff'd in part, rev'd in part on other grounds, 157 N.J. 84, 723 A.2d 45 (1999). To proceed under the res ipsa doctrine, plaintiff must first demonstrate that it is more probable than not that defendants were negligent. Buckelew v. Grossbard, 87 N.J. 512, 526, 435 A.2d 1150 (1981). Here, there is no proof at all that defendants were negligent. Negligence cannot be presumed, it must be proven. Long v. Landy, 35 N.J. 44, 54, 171 A.2d 1 (1961); Vander Groef v. The Great Atlantic & Pacific Tea Co., 32 N.J.Super. 365, 370, 108 A.2d 472 (App.Div.1954).
Plaintiff next argues that the elevator is not a "complex instrumentality" and, therefore, she is not required to provide expert testimony. "When an injury is caused by a piece of complex machinery, the plaintiff must typically provide expert testimony regarding that machinery." Jerista v. Murray, 367 N.J.Super. 292, 300, 842 A.2d 840 (App.Div.2004). The "requirement for expert testimony in complex instrumentality cases results logically from New Jersey law that res ipsa loquitur is inapplicable where the injured party fails to exclude other possible causes of the injury." Gore v. Otis Elevator Co., 335 N.J.Super. 296, 302, 762 A.2d 292 (App.Div.2000); See also Jimenez v. GNOC, Corp., 286 N.J.Super. 533, 544, 670 A.2d 24 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996). The trial judge explicitly relied on the rationale set forth in Gore and Jimenez in dismissing the complaint.
Plaintiff maintains that, while Gore involved an injury caused by an elevator,
nowhere in the Gore case did that Court ever categorize an elevator as "complex instrumentality;" nor did it use that quoted phrase anywhere in its opinion, the most probable reason being, it is submitted, that what was under consideration was the simple opening and closing of the access doors controlled by an electric eye  concepts with which even a lay juror is familiar.
We disagree. In Gore, we discussed the "requirement for expert testimony in complex instrumentality cases" and expressly applied that principle to the elevator injury in that case. 335 N.J.Super. at 302-03, 762 A.2d 292. We left no doubt in Gore that the phrase "complex instrumentality" referred to an elevator and that plaintiff was required to produce expert testimony to support his claim. Id. at 302-04, 762 A.2d 292.
Relying on Rosenberg v. Otis Elevator Co., 366 N.J.Super. 292, 841 A.2d 99 (App.Div.2004), plaintiff maintains that the elevator doors are not a "complex instrumentality." Plaintiff misapprehends Rosenberg, however. Rosenberg involved injuries incurred when an elevator dropped three floors. It had nothing to do with elevator doors. The first motion judge in Rosenberg advised plaintiffs that in the absence of an expert, they could rely upon the res ipsa loquitur doctrine because "plaintiffs could have had no role in causation, and ... defendants had exclusive control over the elevator...." Id. at 302, 841 A.2d 99. A subsequent judge, relying on Gore, dismissed the complaint on the day of trial "because an elevator is a complex instrumentality, [and] plaintiffs could not possibly establish a prima facie case without expert testimony." Id. at 297, 841 A.2d 99. The plaintiffs appealed and we reversed and remanded, noting that the plaintiffs had "understandably relied" on the first judge's ruling and that the second judge should have granted the plaintiffs the opportunity to submit an expert report on liability rather than granting summary judgment on the day of trial. Id. at 302, 841 A.2d 99. We further *372 noted in Rosenberg that two of defendant's employees "have identified the cause of the elevator problem in this case." Id. at 304, 841 A.2d 99. Nothing in our Rosenberg decision suggests that elevator doors are not "complex instrumentalities." Clearly, the closing and timing mechanisms of elevator doors are complex instrumentalities requiring plaintiff to present expert testimony to establish a defective mechanism or negligence in the maintenance of the mechanism.
Plaintiff's assertion that she should have been permitted "to proceed to trial with the testimony of Len Cannon, a highly-experienced elevator technician employed by defendant Schindler," is equally without merit. Other than the fact that Cannon had prepared certain documents regarding the elevator, plaintiff proffered no basis for her reliance on Cannon's testimony. Plaintiff never identified Cannon previously as her expert and had not served a trial subpoena on him. Plaintiff argues that our decision in Myrlak, supra, 302 N.J.Super. at 9-11, 694 A.2d 575, supports her position. It does not. In Myrlak, PATH proffered that the co-defendant's plant manager would testify as to how the defendant's "chairs were manufactured, how they operated and how they were tested at the plant before being shipped to dealers." Id. at 10, 694 A.2d 575. We held that exclusion of the co-defendant's plant manager's testimony was "a mistaken exercise of discretion requiring reversal" because the plant manager could have revealed the co-defendant's manufacturing standards and supported the claim of a defective product. Id. at 10-11, 694 A.2d 575.
Nothing in Cannon's testimony, however, appears to support plaintiff's claim that defendants were negligent in maintaining the elevator. On the day of the accident, Cannon visited the Sands in response to a call that plaintiff had been injured. After he inspected the elevator, he reported that the "door detectors" were "working fine" and that the "door close speeds" were "good." After he completed his inspection, the elevator was returned to service the same day. Consequently, plaintiff could not demonstrate that Cannon's testimony would support her claim that defendants were negligent.

III
Finally, we find no merit in plaintiff's argument that the trial judge failed to make findings of fact and conclusions of law as required by R. 1:7-4(a). We have thoroughly reviewed the entire record in this matter, and we are satisfied that each of the judges addressing the respective motions made sufficient findings to satisfy the rule.
Affirmed.
NOTES
[1] Improperly pled as Sands Hotel Casino.
[2] The Sands is owned and operated by defendant Greate Bay Hotel & Casino, Inc.
[3] Plaintiff's counsel's certification dated September 29, 2003, submitted in support of plaintiff's motion for leave to appeal, is replete with inconsistencies, e.g.: in paragraph 7, he asserts that he learned of the incomplete elevator identification number at plaintiff's deposition after the discovery end date, but in paragraph 19 he claims that he had "been diligent in attempting to ascertain the correct elevator number;" in paragraphs 10 and 11, he asserts that Schindler's counsel's letter dated July 16, 2003 declining to provide further discovery prompted the July 8, 2003 filing of the motion to extend discovery.
[4] As noted previously, plaintiff's counsel claims that he called the Civil Division clerk to request an extension but he never confirmed the request in writing as required by R. 4:24-1(c), and there is no record that the request was received or granted.