885 A.2d 14 (2005)
381 N.J. Super. 112
L. Louis JORDAN and The City Of Asbury Park, Plaintiffs-Appellants,
v.
Peter C. HARVEY, Attorney General of the State of New Jersey, Defendant-Respondent.
L. Louis Jordan and The City of Asbury Park, Plaintiffs-Appellants,
v.
Peter C. Harvey, Attorney General of the State of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 11, 2005.
Decided November 1, 2005.
*15 Robert L. Tarver, Jr., Toms River, attorney for appellant L. Louis Jordan.
Ruderman & Glickman, attorneys for appellant City of Asbury Park (Steven S. Glickman, Springfield, of counsel and on the brief).
Peter C. Harvey, Attorney General, respondent (Dermot P. O'Grady, Deputy Attorney General, of counsel and on the brief).
Before Judges COLLESTER, LISA and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
This case arises from a dispute over whether the City of Asbury Park may lawfully authorize its police director to perform law enforcement duties. The Law Division concluded that the City had no such authority. We affirm.

I
The procedural history and factual background may be summarized as follows. In May 2002, the City appointed *16 L. Louis Jordan as police director. In addition to supervising the police department, Jordan began participating in law enforcement activities, including carrying a firearm, wearing a police uniform, and personally apprehending suspects. In November 2003, after the State Division of Criminal Justice issued a letter opining that the police director position was a civilian role and that Jordan was not authorized to engage in law enforcement activities, the City adopted an ordinance designating the police director as the "executive officer" of the police department. This ordinance also provided that the police director shall "[h]ave, by virtue of his office, . . . all authority and duties of a police officer."
In March 2004, the City and Jordan filed an action against the Attorney General in the Law Division seeking injunctive and declaratory relief against interference with the performance of Jordan's law enforcement duties.[1] Judge Linda Feinberg denied the application, concluding that the police director position was civilian in nature and that the City was not statutorily authorized to confer law enforcement powers on the police director. We agree with those conclusions.

II
Municipal action is preempted where it conflicts with state law or stands "`as an obstacle to the accomplishment'" of a legislative objective, where state law is intended to be exclusive, where the subject matter requires uniformity, or where a pervasive scheme of state regulation precludes local regulation of the subject. Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of W. New York, 71 N.J. 451, 461-62, 366 A.2d 321 (1976) (quoting Hines v. Davidowitz, 312 U.S. 52, 67-68, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941)). Applying these principles we conclude, as did the trial judge, that municipalities are preempted by State law from conferring law enforcement powers on a police director. The comprehensive State regulatory scheme concerning the qualifications and appointment of police officers, and police chiefs, precludes a municipality from conferring such powers on an employee in a manner other than that specifically authorized by statute.
The law enforcement functions of municipal police are pervasively regulated. In fact,
the police industry is probably the most highly regulated, with respect to performance of its employees, of any industry in New Jersey.... [P]olice officers are members of quasi-military organizations, called upon for duty at all times, armed at almost all times, and exercising the most awesome and dangerous power that a democratic state possesses with respect to its residentsthe power to use lawful force to arrest and detain them.
[PBA of N.J. v. Washington Township, 850 F.2d 133, 141 (3d Cir.1988).]
The statutory scheme includes specifications as to appointment of municipal police officers, N.J.S.A. 40A:14-122, special law enforcement officers, N.J.S.A. 40A:14-146.10 through -146.14, and police chiefs, N.J.S.A. 40A:14-118. The statutes also specify who may exercise the power of apprehension and arrest. See N.J.S.A. 40A:14-152, -152.1 and -152.2. In light of the detailed and specific State regulatory scheme concerning who may enforce the criminal laws, we conclude that a municipality cannot accord law enforcement powers to an employee without specific *17 statutory authority. We find no statutory authority to accord such powers to a police director.[2]
Permitting a civilian police director to engage directly in law enforcement activities could enable the municipality to circumvent the rigorous training requirements and age restrictions applicable to police hires. See N.J.S.A. 52:17B-66 to -69.2 (mandatory training for law enforcement officers including municipal police officers); N.J.S.A. 40A:14-146.11 (mandatory training for special law enforcement officers); N.J.S.A. 2C:39-6(j)(law enforcement officers may not carry firearms without undergoing statutorily required police training); N.J.S.A. 40A:14-127, -127.1 (setting age restrictions for appointment and reappointment of municipal police officers). In that connection, we note that the statute mandating police training defines "police officer" to include "any employee of a law enforcement unit ... other than civilian heads thereof." N.J.S.A. 52:17B-67.
Permitting such an appointment as was made here would also enable the municipality to evade the statutory requirement that police chiefs be appointed by promotion from within the police department. This issue is well illustrated by our decision in In re Police Chief, 266 N.J.Super. 101, 628 A.2d 809 (App.Div.1993). In that case, the Village of South Orange appointed Steven Palamara, a police captain on leave from another municipality, to the "unclassified position of civilian Police Director." Id. at 103, 628 A.2d 809. When two police unions complained that Palamara was performing the duties of a police chief, the Attorney General issued an opinion that he could not do so and could not receive pension credit for service as police director. Ibid. Thereafter, the Village attempted to appoint him as police chief. However, applicable civil service rules required that with limited exceptions a police chief must be appointed through a promotional examination, a test for which Palamara would not have been eligible because he was not a member of the Village police force. Id. at 104-06, 628 A.2d 809. The Village sought and received permission from the Merit System Board to hold an open competitive examination instead. Id. at 104, 628 A.2d 809. The unions appealed and we held that the Board's determination violated its own regulations and N.J.S.A. 11A:4-2, which "expresses strong preferences for promotional examinations." Id. at 105, 108-09, 628 A.2d 809. See N.J.A.C. 4A:2.3(a).
The same preference for promotions from within the police department is expressed in N.J.S.A. 40A:14-129, which requires that, except in first and second class cities, in any non-civil service municipality "a promotion of any member or officer of the police department or force to a superior position shall be made from the membership of such department or force," and "[n]o person shall be eligible for promotion to be a superior officer unless he shall have previously served as a patrolman in such department or force."
Thus, the Legislature has unequivocally expressed its policy judgment that police chiefs are to be appointed by promotion from within the police department from a pool of candidates who have served in the rank and file in that department. See also N.J.S.A. 40A:14-130. Permitting a municipality to appoint a civilian police director, and to give that director the same *18 law enforcement powers as a police chief, would enable the municipality to circumvent the statutory and regulatory mandate that police chief positions be filled by promotion from within the police department.
Asbury Park is a civil service municipality and is thus subject to the civil service statutory and regulatory requirements for the appointment of a police chief. While there is no dispute that Jordan is highly qualified to perform law enforcement duties, his appointment as police chief in all but name is inconsistent with the hiring requirements for that position.[3]
In addition to creating specific requirements for the appointment of law enforcement personnel in general, and police chiefs in particular, the Legislature has implicitly recognized the civilian character of the police director position. There is no statute directly authorizing the appointment of a police director. However, as we discussed in Kossup v. Bd. of Trustees, Police & Firemen's Retirement System, 372 N.J.Super. 468, 859 A.2d 721 (App.Div.2004), the Police and Firemen's Retirement System (PFRS) pension statutes, and the history of those statutes, demonstrate that the Legislature has acknowledged the creation of police director and fire director positions and has recognized that these are civilian rather than law enforcement or firefighting jobs. Id. at 473-75, 859 A.2d 721. For that reason, a person who is appointed to a police or fire director position may not participate in PFRS unless he or she was already serving as a law enforcement officer or firefighter within six months prior to the appointment. Id. at 475-76, 859 A.2d 721; see N.J.S.A. 43:16A-3.1 (permitting continued PFRS membership by a person who is appointed to serve "with a law enforcement unit ... in an appointive capacity with administrative or supervisory duties over policemen" provided that the appointee "not more than six months prior to such [appointment] served as a member of that or any other law enforcement unit"). The statute was intended to permit experienced law enforcement officers to accept appointment to the civilian post of police director without losing their PFRS benefits. See id. at 474, 859 A.2d 721.
For all of these reasons, we conclude, as did the Law Division, that the City may not confer law enforcement powers upon its police director.
Affirmed.
NOTES
[1] The Attorney General does not contend that the correspondence from the Division of Criminal Justice constituted a final, appealable agency decision.
[2] In light of our conclusions as set forth in this opinion, we deem it unnecessary to address the issue of whether the Attorney General is authorized to exercise some degree of oversight over police directors or to require police directors to cooperate in matters of State law enforcement policy.
[3] Blurring the distinction between the role of police chief and police director could also encourage efforts to evade the statutory requirement that law enforcement officers retire at age 65. See N.J.S.A. 43:16A-5(1). A retired police chief could, for example, be appointed as a police director and yet continue to engage in law enforcement activities of the type Jordan performed in this case.