**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1564-15T2

SAM RUSSO,

    Plaintiff-Appellant,

v.

PLUMSTED TOWNSHIP, PLUMSTED
TOWNSHIP POLICE DEPARTMENT,
GLEN RICCARDI, and RONALD
S. DANCER,

    Defendants,

and

MICHAEL LYNCH,

    Defendant-Respondent.

---

Argued April 5, 2017 — Decided May 16, 2017

Before Judges Alvarez, Manahan, and Lisa.

On appeal from the Superior Court of New
Jersey, Law Division, Ocean County, Docket No.
L-794-11.

John C. Eastlack, Jr., argued the cause for
appellant (Weir & Partners LLP, attorneys; Mr.
Eastlack and Lilia Londar, on the briefs).

Jared J. Monaco argued the cause for
respondent (Gilmore & Monahan, P.A.,
attorneys; Mr. Monaco, of counsel and on the
brief).

PER CURIAM

Plaintiff Sam Russo appeals the Law Division's November 17, 2015 grant of summary judgment to defendant Michael Lynch dismissing the amended complaint. Russo also appeals the denial of his request for extension of the discovery end date. Having reviewed the record and relevant law, we affirm for the reasons stated by Judge Den Uyl, with some brief additional comments.

Russo alleged several causes of action against Lynch, claiming that Lynch acted beyond his statutory authority while serving as the Plumsted Township Public Safety Director in 2009. Russo owns and operates a 100-acre farm adjoining a residential development where Lynch resided during the relevant timeframe.

Russo's appendix includes a February 15, 2009 police report, signed by a Patrolman Uricks. We reproduce it in full:

> T/O AND 263 WERE REQUESTED BY DIRECTOR LYNCH TO RESPOND TO CANDACE COURT AND BOBBI'S TERRACE BECAUSE OF QUAD COMPLAINTS HE HAD BEEN RECEIVING. UNITS WENT OUT ON LOCATION AND FOLLOWED THE TOWNSHIP BUILDING INSPECTOR/CODE ENFORCEMENT OFFICER, AND DIRECTOR LYNCH TO THE RUSSO FARM. UPON ARRIVAL, T/O SAW 5 DIRT BIKES AND 1 QUAD ON TOP OF A LARGE MOUND OF DIRT, AND ONE DIRT BIKE THAT WAS JUMPING ANOTHER LARGE MOUND. OFFICERS SPOKE TO THE PROPERTY OWNER, WHO STATED THAT HE DID NOT BELIEVE THAT HE WAS IN VIOLATION OF THE TOWNSHIP NOISE ORDINANCE. T/O, 263, INSPECTOR RICCARDI, AND DIRECTOR LYNCH EXPLAINED THE ORDINANCE TO [] RUSSO, WHO STATED THAT HE WOULD SPEAK WITH [] RICCARDI IN THE BEGINNING OF THE NEXT WEEK []

> IN REFERENCE TO THIS INCIDENT. UNITS WENT
> DOOR TO DOOR IN THE AREA OF CANDACE COURT AND
> BOBBI'S TERRACE TO SPEAK WITH RESIDENTS, AND
> SEE IF THE[Y] HAVE ANY COMPLAINTS OR CONCERNS
> ABOUT THE NOISE. THE FOLLOWING STATED THEY
> WANTED TO COMPLAIN ABOUT THE VIOLATIONS THAT
> HAVE BEEN OCCURRING.

The report listed the names of five residents who wanted to lodge noise complaints, with corresponding addresses and phone numbers.

On February 21, 2009, officers were again "dispatched to the Russo farm for a noise complaint." That report, also authored by Uricks, states:

> THE SUSPECTS AND SAM RUSSO WERE WARNED THAT
> THEY WOULD BE ISSUED SUMMONSES IF OFFICERS
> RETURNED. T/O ARRIVED ON LOCATION AND SAW (3)
> DIRT BIKES JUMPING IN THE REAR OF THE
> PROPERTY. T/O AND 263 BEGAN TO WALK TO THE
> REAR OF THE PROPERTY, AND AT THAT TIME, THE
> BIKES RODE OFF TO AN UNKNOWN AREA. PATROLS
> SPOKE TO SAM RUSSO, WHO STATED THAT HE KNOWS
> THAT HE CAN RIDE HIS DIRT BIKES ON HIS
> PROPERTY, BECAUSE HE SPOKE TO HIS LAW[Y]ER.
> [] RUSSO WAS INFORMED LAST SUNDAY, OF OUR
> ORDERS TO TAKE ACTION IF WE WERE CALLED TO HIS
> PROPERTY AGAIN. [] RUSSO TOLD T/O AND 263 THE
> NAMES OF THE THREE INDIVIDUALS ON THE BIKES.
> THEY WILL BE ISSUED SUMMONSES LATER IN THE
> WEEK BY ORDER OF THE DIRECTOR.

A second report of the incident was filed by a Patrolman England:

> Patrol was contacted by OCR for a noise
> complaint in the area of the above location.
> When the individuals on the dirt bikes saw
> patrol, they took off into the woods and could
> not be found. This officer and also 264 spoke
> with the owner of the property Sam Russo who

A-1564-15T2

was advised the previous week not to have anyone ride even on his property until the matter was cleared. He related it was his property and that the dirt bikes that were being rid[d]en had new suppressed muffler systems which quieted the bikes. He also related to patrol that he had spoken with his lawyer who told him [] he was not in violation of any borough ordinances that he could ride on his property. [] Russo gave us the names of the riders and was told they would be receiving borough ordinance summonses as per the Director of this department.

An aerial surveillance of Russo's farm was conducted by the Ocean County Sheriff's Department on March 17, 2009, because he was suspected of illegal dumping on his property. The detective who conducted the surveillance produced a report which did not mention Lynch.

In answers to interrogatories and the certification he filed in support of the motion for summary judgment, Lynch said he accompanied two police officers and the town's zoning officer to Russo's farm on February 15, 2009, to discuss noise complaints. The zoning officer explained the noise ordinance to Russo, who identified one of the bikers as a professional rider from Maryland. After that meeting, Lynch thought that Russo agreed to stop the operation of the dirt bikes on his property, as a result of which no summonses were issued to him that day.

While meeting with residents in the community adjoining Russo's farm, Lynch had difficulty hearing what was said over the

noise from the dirt bikes even when indoors. Since the noise complaints continued, and the Township noise ordinance "needed to be enforced if it was being violated," Lynch told Township police officers to respond. Lynch named five homeowners, in addition to the five mentioned in the police reports, who had called police with complaints regarding noise from the dirt bikes on Russo's property.

Lynch had no other involvement with the matter and had no involvement or knowledge regarding either Russo's property assessment or dredge spoils allegedly dumped on Russo's property, issues Russo raised in the complaint. Lynch claimed that the aerial surveillance of Russo's property was initiated by a police sergeant, and not at his suggestion. Lynch reiterated that he never ordered the issuance of summonses for noise from the operation of farm equipment, but that he did advise supervisors in the police department that they were expected to respond to complaints from residents and to take appropriate action to enforce "any laws or ordinances being violated."

In his affidavit submitted in opposition to the motion for summary judgment, Russo alleges that Lynch coordinated a conspiracy designed to prevent him from conducting his farm business and to deprive him of his constitutional rights. He accused Lynch of causing summonses for noise violations to be

issued against him, and asserted that he was exempt from the noise ordinance because of his farming license. Russo also accused Lynch of having instigated the warrantless aerial search of his property. He sought compensation for his claimed loss of forty percent of his farm income and damage to his personal health as a result of Lynch's allegedly ultra vires actions.

In opposition to the motion for summary judgment, Russo provided the police reports, the aerial surveillance report, and two letters from his former attorney. Judge Den Uyl found that the letters had no "evidentiary value[,]" and noted that the aerial surveillance report does not mention Lynch. The judge referenced other police reports not included in the record on the appeal, in which neighbors complained that "[t]he dirt bikes would carry on for several hours." The residents described the noise as so overwhelming that they could not be heard while conversing inside their own homes, had difficulty conducting phone conversations, and wanted to pursue the matter so that the noise would stop. The February 21 visit was instigated by a homeowner. The documents provided by Russo in opposition to the motion indicated summonses were only issued to the dirt bike riders and not to Russo himself.

Judge Den Uyl further stated:

> [Russo's affidavit] contains nothing more than unsupported allegations that [] Lynch orchestrated a conspiracy to harm him and/or

6

his business. [Russo] has not come forward with competent evidence to corroborate his theory from which a jury could reasonably infer wrongful and actionable conduct . . . . The affidavit is conjecture not competent evidence. There was ample time and opportunity for plaintiff to develop and substantiate his claim. This case was filed in 2011 and discovery was extended to July 1, 2015 so that plaintiff could engage in the discovery he had not previously sought. Interrogatories were not served until 2015. No depositions were ever taken.

Judge Den Uyl reviewed each and every allegation made in Russo's amended complaint, beginning with his claims grounded on 42 U.S.C. § 1983, 1985, 1986, and 1988. While he agreed with Russo that a director of public safety may not engage in police-only activities, he dismissed those counts based on the complete lack of evidence regarding any such conduct or any abuse of power. He concluded that neither the police reports nor the aerial surveillance report established that Lynch had, while acting under color of state law, acted against Russo.

The judge similarly disposed of Russo's malicious prosecution claim. After reviewing the necessary elements, he reiterated that Russo failed to "come forward with competent evidence from which a jury could reasonably infer that [] Lynch initiated a criminal or civil proceeding against [Russo]."

The judge next reviewed the causes of action for negligence, tortious interference with economic advantage, and negligent

infliction of emotional distress. He opined that Russo did not produce any evidence of conduct that would raise a material issue of fact that should be presented to a jury.

Finally, the judge found Russo failed to demonstrate any connection between Lynch and the aerial surveillance or the issuance of ordinance violations against third parties for their use of recreational dirt bikes. Accordingly, he dismissed the complaint.

Russo's counsel was substituted after the discovery end date of July 1, 2015. Russo's application for additional discovery was denied August 7, 2015, also beyond the discovery end date. Although Lynch's attorney consented to the taking of depositions after July 1, he did not consent to a broader extension of discovery. We describe the judge's analysis on this issue in the relevant section of the opinion.

Now on appeal, Russo raises the following points for our consideration:

> I. Standard of Review.
>
> II. The Trial Court Improperly Granted Summary Judgment Because Evidence of Record Established Genuine Issues of Material Facts.
>
>> A. The Court Erred in Dismissing Counts One and Two Of Petitioner's Amended Complaint.

A-1564-15T2

B. The Court Erred in Dismissing Counts Five and Six Of Petitioner's Amended Complaint.

C. The Court Erred in Dismissing Counts Eight and Nine Of Petitioner's Amended Complaint.

D. The Court Erred in Dismissing Counts Eleven, Twelve, And Thirteen of Petitioner's Amended Complaint.

III. The Trial Court Erred by Denying Petitioner's Motion to Extend Discovery.

A grant of summary judgment is reviewed on appeal "in accordance with the same standard as the motion judge." <u>Globe Motor Co. v. Igdalev</u>, 225 <u>N.J.</u> 469, 479 (2016) (quoting <u>Bhagat v. Bhagat</u>, 217 <u>N.J.</u> 22, 38 (2014)). That standard compels summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and the moving party is entitled to judgment or order as a matter of law." <u>R.</u> 4:46-2(c). Where "the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature,' the proper disposition is summary judgment." <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 529 (1995) (quoting <u>Judson v. People's Bank & Trust Co. of Westfield</u>, 17 <u>N.J.</u> 67, 75 (1954)).

We agree with Judge Den Uyl's conclusions regarding the state of Russo's proofs. The police reports, aerial surveillance reports, certifications, affidavits, and answers to interrogatories, do not demonstrate any material issue of fact. Viewing the proofs in the light most favorable to Russo, it does not appear he has any evidence that Lynch acted unlawfully. It is undisputed that Lynch participated in that first February 15, 2009 meeting with Russo, the zoning officer, and police——but Lynch did not act after that, and the meeting resulted in no adverse consequences to Russo. Lynch's advice to the officers to enforce the law is not actionable.

Russo's reliance on Jordan v. Harvey, 381 N.J. Super. 112 (App. Div. 2005), is misplaced. In Jordan, a police safety director "began participating in law enforcement activities, including carrying a firearm, wearing a police uniform, and personally apprehending suspects." Id. at 114. We held that a public safety director's conduct is unlawful when it includes action limited by statute to the role played by a police officer. Id. at 115. Lynch's behavior did not cross that boundary.

N.J.S.A. 40A:14-118 permits a municipality to retain a director of public safety to "act in all manners relating to police function in the municipality." The police chief is directly responsible to the director of public safety for the "efficiency

and routine day-to-day operations" of the police force.  Ibid.

Lynch's actions were consistent with that role.  He personally

issued no complaints, nor did he direct that any be issued.  The

investigatory report calling for aerial surveillance does not

mention him.  Thus, Lynch appears to have acted well within the

boundaries of his statutorily defined role.  When the evidence is

viewed in the light most favorable to Russo, it does not

demonstrate a genuine issue of material fact, and Lynch is entitled

to judgment as a matter of law.

Turning to Russo's second claim of error, on August 7, 2015,

the judge denied Russo's application to extend the discovery end

date.  We review discovery orders deferentially, subject to an

abuse of discretion standard.  State in Interest of A.B., 219 N.J.

542, 554 (2014).  In denying the application, the court principally

relied upon the issuance of a February 9, 2014 case management

order, which established a July 1, 2015 discovery end date and set

a September 14 trial date.  The court observed that the case was

four years old, "absolutely no discovery" had been undertaken

before the case management order, and that the motion itself was

filed by substituted counsel past the discovery end date.  Russo's

substituted counsel entered the case after the discovery end date.

The court denied the motion in the absence of a "showing of

exceptional circumstances and nothing even bordering on good cause."

Lynch's attorney had consented to a deposition being taken beyond the deposition end date but before the discovery end date. No agreement existed as to a global extension of the discovery end date, however. In light of the age of the case, and the fact interrogatories were not served on Lynch until after the issuance of the case management order, shortly before the discovery end date in a case that had been pending for four years, no abuse of discretion occurred.

Discovery is extended, once a trial date has been scheduled, only upon a showing of "exceptional circumstances[.]" R. 4:24-1(c). The substitution of new counsel does not constitute the type of extraordinary circumstances envisioned by the rule. See Rivers v. LSC P'Ship, 378 N.J. Super. 68, 79 (App. Div. 2005) (quoting Huszar v. Greate Bay Hotel & Casino, 375 N.J. Super. 463, 473-74 (App. Div. 2005)) (holding that no extraordinary circumstances are present where "delay rests squarely on plaintiff's counsel[]"); Zadigan v. Cole, 369 N.J. Super. 123, 132, n.8 (App. Div. 2004) ("For purposes of a showing of 'exceptional circumstances,' there generally must be some showing that the circumstances presented were clearly beyond the control of the attorney and the litigant seeking an extension of time.").

During the four years this matter was pending, the only interrogatories that were served prior to May 2015 appear to be, although the date of signature is not clear, interrogatories served by Lynch upon Russo. In light of the unexplained delay, no extension was warranted as no exceptional circumstances were shown.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION