JUSTICE ALBIN delivered the opinion of the Court.
**135 Res ipsa loquitur is an equitable doctrine that allows, in appropriate circumstances, a permissive inference of negligence to be drawn against a party who exercises exclusive control of an instrumentality that malfunctions and causes injury to another. The rationale for the res ipsa inference is that the injury-causing occurrence ordinarily would not happen in the absence of negligence and that the party controlling the instrumentality is in the best position to explain what went wrong and why. In Jerista v. Murray, we held that the res ipsa inference applied to a supermarket's automatic door that went awry, striking and injuring a customer as she entered the store. 185 N.J. 175, 190-200, 883 A.2d 350 (2005).
In this negligence case, we must decide whether the principles enunciated in Jerista apply equally to a condominium building's elevator doors that opened and closed on plaintiff, a resident, seriously injuring her as she attempted to exit the elevator. The trial court rejected the res ipsa inference, finding that the cause of an elevator's malfunction can be unrelated to negligent maintenance and that plaintiff failed to offer proofs excluding non-fault-based causes. Based in large part on its rejection of the res ipsa inference, the court granted summary judgment to defendants. The Appellate Division affirmed.
We now hold that the dictates of Jerista apply to the facts presented here. The res ipsa inference of negligence is applicable because common experience instructs that elevator doors -- however complex their operation may be -- ordinarily should not strike a person entering or exiting an elevator in the absence of negligence. To warrant the res ipsa inference, the injured plaintiff had no obligation to exclude other possible causes that might explain **136 the malfunctioning of the elevator doors or to show that defendants were on notice of some defect in the doors' operation. In granting summary judgment in favor of defendants, the trial court and Appellate Division erred in finding that res ipsa does not apply to malfunctioning elevator doors.
We therefore reverse the entry of summary judgment and remand for further proceedings.
I.
A.
Plaintiff Maureen McDaid brought a negligence action against defendants Aztec *325 West Condominium Association for Aztec West Condominium in Hackensack (the Condominium Association); Preferred Management, Inc., the Association's management company; and Bergen Hydraulic Elevator, the elevator-maintenance provider. Howard Gartenberg served as the Condominium Association's property manager. The complaint alleged that McDaid suffered serious injuries when she was exiting the elevator and the elevator doors unexpectedly and "repeatedly" closed on her. Defendants moved for summary judgment, claiming that McDaid did not make out a prima facie case of negligence.
We rely on the factual presentation in the summary judgment record, giving McDaid -- the non-moving party -- the benefit of the most favorable evidence to support her claim, as we must at this stage in the proceedings. See R. 4:46-2; Bauer v. Nesbitt, 198 N.J. 601, 604 n.1, 969 A.2d 1122 (2009) ("In considering the merits of a motion for summary judgment, both trial and appellate courts must view the facts in the light most favorable to the non-moving party ....").
B.
McDaid, who has cerebral palsy, was a resident of the Aztec West Condominium in Hackensack. Sometime in mid to late September 2010, McDaid complained to Gartenberg that the elevator **137 door was "closing too fast." Gartenberg communicated this information to Bergen Hydraulic's representative.[1] McDaid asserts that on October 14, 2010, she entered the building's elevator and rode it to the lobby. According to McDaid, as she exited the elevator, the elevator doors closed prematurely, striking her and knocking her to the ground. She fell face forward, hitting her head on her walker. As she lay prone, the doors opened and closed on her a second time. McDaid suffered injuries to various parts of her body and required a seventeen-day stay at a rehabilitation institute where she received extensive physical therapy and other medical treatment.
The elevator doors were equipped with two safety features - - a mechanical safety edge and an electric eye. A mechanical safety edge is a bumper that causes an elevator door to retract when it makes contact with an object. An electric eye emits light beams from the elevator doors across the entrance threshold, detecting the presence of objects in its pathway. If working properly, the electric eye prevents the elevator doors from closing on a person.
Four days after the accident, a construction code official for the City of Hackensack inspected the condominium's elevator and determined that the electric eye was in need of repair. Shortly afterward, Bergen Hydraulic conducted an inspection, found that the elevator's electric eye's relay contacts were "not functioning properly," and repaired it that day.
Defendants had interlocking contractual relationships. The Condominium Association contracted with Preferred Management to maintain the common elements of the condominium property, including the mechanical equipment owned by the Association. Beginning in 1995, the Condominium Association contracted with Bergen Hydraulic to provide monthly and emergency service and **138 maintenance to the elevator, and to repair and replace elevator door protection and photoelectric devices. Each defendant denied knowledge of any *326 malfunction or problems with the elevator's electric eye before the accident.
McDaid provided a report from an expert in elevator repair and maintenance, who concluded that the elevator's malfunctioning electric eye caused the accident. The Condominium Association and Preferred Management submitted an expert report from a certified elevator inspector, which stated that McDaid's "failure to clear the path" of the closing elevator door "in a timely manner" was the proximate cause of her injuries. Bergen Hydraulic's expert report agreed with that assertion and stated that the elevator was "properly maintained" at the time of the accident.
C.
At the end of the discovery period, defendants moved for summary judgment on the basis that they did not have notice of a malfunctioning electric eye before the accident and therefore McDaid could not hold them liable for negligently causing her injuries.
The trial court granted summary judgment in favor of defendants and dismissed McDaid's complaint. The court rejected the application of the doctrine of res ipsa loquitur, finding that the malfunctioning of elevator doors is not an occurrence that "ordinarily bespeaks negligence." More specifically, the court stated that McDaid "did not refute the contention that the electric eye, being a mechanical device, is subject to failure from time to time totally unrelated to negligence." Relying on Gore v. Otis Elevator Co., 335 N.J. Super. 296, 302-03, 762 A.2d 292 (App. Div. 2000), the court held that McDaid failed "to bring forth affirmative evidence that tends to exclude other causes" for the malfunctioning of the elevator.
The court accepted that the parties had a legitimate dispute about whether the electric eye malfunctioned, causing the elevator doors to close on McDaid. The court, however, concluded that **139 McDaid failed to establish that defendants had actual or constructive notice of the malfunctioning electric eye. Additionally, the trial court struck, as a net opinion, the part of McDaid's expert report that stated that Bergen Hydraulic should have recommended that the protection system in the condominium's elevator "be replaced with a new upgraded safer reopening device."
For those reasons, the court determined that McDaid fell short of making out a prima facie case of negligence.[2]
D.
In an unreported opinion, the Appellate Division affirmed, "substantially for the reasons expressed by [the trial court]." The panel agreed with the trial court that res ipsa loquitur did not apply, relying on Gore, 335 N.J. Super. at 296, 762 A.2d 292, a case in which the Appellate Division "declined to apply the [res ipsa] doctrine against an elevator company in an action for negligent maintenance of elevator doors." The panel also agreed that part of McDaid's expert report, referring to the failure to upgrade the elevator's protection system, constituted a net opinion. The panel ultimately held that defendants' lack of "actual or constructive notice of the electric eye malfunction ... [was] fatal to [McDaid's] claims of premises liability."
*327 We granted McDaid's petition for certification. 230 N.J. 528, 170 A.3d 316 (2017). We also granted the motion of the New Jersey Association for Justice (NJAJ) to participate as amicus curiae.
II.
A.
McDaid argues that the Condominium Association, which exercised control over the condominium property, owed a non-delegable **140 duty to ensure the safety of those who used the elevator and that all defendants breached their duty to adequately maintain and repair the elevator. McDaid asserts that she was entitled to a res ipsa inference because elevator doors probably do not malfunction in the absence of negligence. She also claims that the trial court improvidently granted summary judgment because she established a prima facie case through the res ipsa inference, her expert report, and her account as presented in discovery.
B.
Amicus curiae NJAJ expresses its concern that the Appellate Division's interpretation of res ipsa undermines the doctrine's very purpose, which is to shift to a defendant the obligation of explaining why an instrumentality under its control caused injury to a plaintiff. According to NJAJ, requiring the plaintiff to point to the specific act of negligence of the defendant denies the plaintiff the benefit of the res ipsa inference. NJAJ asserts that an elevator door that closes on a passenger is an occurrence that bespeaks negligence, giving rise to a res ipsa inference.
C.
Defendants argue that the Appellate Division properly affirmed the grant of summary judgment. They contend that the res ipsa inference is inapplicable to cases involving malfunctioning elevator doors for the reasons expressed in Gore, 335 N.J. Super. at 303, 762 A.2d 292. Relying on Gore, defendants submit that in a negligence action involving a complex instrumentality, such as an elevator, the plaintiff "must bring forth affirmative evidence that tends to exclude other possible causes of the injury."See ibid. They assert that an elevator's electric eye "is a piece of mechanical equipment containing relays which, without notice or negligence, may on occasion fail" and therefore res ipsa is not an appropriate fit in this context.
Further, defendants maintain that McDaid failed to present evidence that the elevator's electric eye was not working properly **141 or that they had notice that it was malfunctioning before the accident. They assert that in the absence of actual or constructive notice of some defect in the operation of the elevator doors, they cannot be held liable in negligence. They also point to the reports of their experts, who opined that McDaid "was not within the plane of the electric eye sufficient to trigger the safety feature." With that evidential foundation, the Condominium Association and Preferred Management theorized that McDaid's "neurological condition suggest[ed] a cause of [her] injuries wholly unrelated to the elevator's function."
III.
A.
Whether the doctrine of res ipsa loquitur applies to an allegedly malfunctioning elevator door that causes injury to a passenger is an issue of law. We review matters of law de novo, owing no deference to the interpretive conclusions of either the trial court or Appellate Division. Qian v. Toll Bros. Inc., 223 N.J. 124, 135, 121 A.3d 363 (2015).
*328 B.
Under the Condominium Act, N.J.S.A. 46:8B-1 to -38, condominium associations are "responsible for the administration and management of the condominium and condominium property." N.J.S.A. 46:8B-12. A condominium association's responsibility extends to "[t]he maintenance, repair, [and] replacement ... of the common elements." N.J.S.A. 46:8B-14(a). An elevator shared by the condominium community is part of the common elements or common areas. See N.J.A.C. 5:10-2.2 (defining "common area" as "all areas accessible to, and which may be utilized by either occupants of a building or the general public ... which is not part of any dwelling unit").
Like any premises owner under the common law, a condominium association has a duty to exercise reasonable care to **142 protect the condominium's residents from a dangerous condition on property within the ambit of the common elements. See Qian, 223 N.J. at 137, 121 A.3d 363 (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433-34, 625 A.2d 1110 (1993) ). A condominium association's duty to keep the common elements reasonably safe is non-delegable. N.J.A.C. 5:10-4.1(a). In accordance with the Act, condominium associations have the duty of a premises owner as set forth in the governing regulations, N.J.A.C. 5:10-4.1(c), and one such duty is to ensure that "elevator doors, ... safety devices and operating mechanisms [are] maintained in good working order and free of hazards," N.J.A.C. 5:10-12.1(a). That duty necessarily includes "a duty of reasonable care to guard against any dangerous conditions [relating to the elevator] that the [association] either knows about or should have discovered." See Hopkins, 132 N.J. at 434, 625 A.2d 1110 ; see also N.J.A.C. 5:23-12.1 to - 12.12 (setting forth detailed standards for maintenance and inspection of elevators).
Finally, "[i]f an elevator is covered by a maintenance agreement, the ambit of a maintenance contractor's duty to third persons may be measured by the nature and scope of its contractual undertaking." Rosenberg v. Otis Elevator Co., 366 N.J. Super. 292, 303, 841 A.2d 99 (App. Div. 2004) (alteration in original) (quoting Qualls v. U.S. Elevator Corp., 863 P.2d 457, 462-63 (Okla. 1993) ).
C.
In a premises liability case, the plaintiff has the burden of proving that the property owner's negligence caused her injuries. Jerista, 185 N.J. at 191, 883 A.2d 350. "Res ipsa loquitur, Latin for 'the thing speaks for itself,' is a longstanding evidentiary rule grounded in principles of equity" that "enables the plaintiff to make out a prima facie case" in certain circumstances. Ibid. The res ipsa doctrine allows a factfinder to draw an inference of negligence when: "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's **143 exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." Id. at 192, 883 A.2d 350 (quoting Buckelew v. Grossbard, 87 N.J. 512, 525, 435 A.2d 1150 (1981) ).
The res ipsa doctrine advances the common-sense notion that the party who maintains exclusive control over the object that goes awry and causes injury is in a superior position to explain what went wrong and why. Ibid. When the evidence provides a reasonable basis for invoking res ipsa, then the factfinder can infer "that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would *329 not have occurred." Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288-89, 471 A.2d 25 (1984) (quoting Bornstein v. Metro. Bottling Co., 26 N.J. 263, 269, 139 A.2d 404 (1958) ). Although the ultimate burden of persuasion always remains with the plaintiff, the res ipsa inference gives an incentive to the defendant to dispel the inference by showing that whatever went wrong was not due to his negligence or was due to the fault of some other person or the plaintiff. Jerista, 185 N.J. at 192, 883 A.2d 350.
The case before us implicates only the first prong of the res ipsa analysis -- whether the closing of automatic elevator doors on a passenger "ordinarily bespeaks negligence." Whether an accident "ordinarily bespeaks negligence" requires a probability assessment -- is it more or less likely that such an event would occur in the absence of negligence? See Buckelew, 87 N.J. at 526-27, 435 A.2d 1150. Obviously, automatic doors are not supposed to close on and seriously injure a passenger who enters or exits an elevator. But if that happens, is it more likely that the accident occurred because due care was not exercised in the maintenance of the elevator or because elevator doors will malfunction, from time to time, without anyone being at fault?[3] That is the basic **144 question raised in deciding whether res ipsa applies to the facts of this case.
To invoke the res ipsa inference, a plaintiff does not have to exclude alternative possible causes of the accident, "provided that the circumstances establish 'that it is more probable than not that the defendant's negligence was a proximate cause of the mishap.' " Jerista, 185 N.J. at 192, 883 A.2d 350 (quoting Brown, 95 N.J. at 291-92, 471 A.2d 25 ). The res ipsa inference ordinarily will allow the plaintiff to establish a prima facie case and survive a motion to dismiss at the summary judgment stage -- that is, unless "the defendant's countervailing proofs are so overwhelming that they destroy any reasonable inference of negligence." Id. at 193, 883 A.2d 350 (citing Brown, 95 N.J. at 289, 471 A.2d 25 ). Because the res ipsa inference is simply permissive, if the case goes to trial, "the factfinder 'is free to accept or reject' it." Ibid. (quoting Buckelew, 87 N.J. at 526, 435 A.2d 1150 ).
D.
With those general principles as our guide, we applied the doctrine of res ipsa in Jerista, a case involving a supermarket's automatic door that caused injury to a patron. 185 N.J. at 190-200, 883 A.2d 350. In that case, the automatic door opened inward as the patron entered the supermarket, and then "suddenly swung backwards, striking her right side and briefly pinning her body, causing significant injuries." Id. at 182, 883 A.2d 350. We rejected the notion that a negligence action involving a complex instrumentality necessarily required the patron to produce expert testimony to gain the res ipsa inference. Id. at 197-99, 883 A.2d 350. The drawing of a res ipsa inference does not depend on "whether the instrumentality at issue is complex or simple, but whether based on common knowledge the balance of probabilities favors negligence." Id. at 199, 883 A.2d 350. Thus, "[o]nly when the res ipsa inference falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge is expert testimony required." Ibid.
**145 With regard to the automatic door in Jerista, we reasoned that
*330 [a]n automatic door may be a highly sophisticated piece of machinery, but it probably does not close on an innocent patron causing injury unless the premises' owner negligently maintained it. That conclusion can be reached based on common knowledge without resort to expert testimony. A jury does not need an expert to tell it what it already knows. If the premises' owner, who has exclusive control over the automatic door, has proof that he is not to blame and that another is at fault, he must come forward to rebut the inference.
[ Id. at 197, 883 A.2d 350.]
We did not break new ground in Jerista in finding that the supermarket customer was entitled to the res ipsa inference. We relied on our decision in Rose v. Port of New York Authority, 61 N.J. 129, 136-37, 293 A.2d 371 (1972), a case involving a plaintiff who was struck by an automatic glass door as he entered an airline terminal. Jerista, 185 N.J. at 193-95, 883 A.2d 350. The res ipsa inference applied in Rose"because it is common knowledge that people ordinarily pass through automatic doors without suffering injury, and that an automatic door smashing into a customer 'strongly suggests a malfunction which in turn suggests neglect.' " Id. at 195, 883 A.2d 350 (quoting Rose, 61 N.J. at 136-37, 293 A.2d 371 ). In Jerista, we cited a number of jurisdictions that agreed with that proposition. Id. at 196, 883 A.2d 350 ; see, e.g., Brewster v. United States, 542 N.W.2d 524, 531-32 (Iowa 1996) (noting that majority of courts "have concluded an automatic door malfunction does not occur in the absence of negligence" and that "it is within the common experience of lay people to come to this conclusion").
Importantly, in Jerista, we specifically disapproved of the legal pronouncements in Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 544, 670 A.2d 24 (App. Div. 1996), that res ipsa is inapplicable in complex instrumentality cases unless expert testimony is presented and the injured party "exclude[s] other possible causes of the injury." 185 N.J. at 197-98, 883 A.2d 350 (quoting Jerista v. Murray, 367 N.J. Super. 292, 300, 842 A.2d 840 (App. Div. 2004) ). Here, the trial court and appellate panel relied on those discredited legal pronouncements, citing to Gore, 335 N.J. Super. at 302-03, 762 A.2d 292, which, in turn, looked to Jimenez for support.
**146 To be sure, Gore involved allegedly malfunctioning elevator doors that caused injury to the plaintiff, 335 N.J. Super. at 299-300, 762 A.2d 292, not an automatic store door as in Jerista or an airport door as in Rose. Nevertheless, it bears mentioning that after our decision in Jerista, we granted certification in Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J. Super. 463, 868 A.2d 364 (App. Div. 2005), an elevator-door case, and "summarily remanded to the trial court for reconsideration in light of Jerista." 185 N.J. 290, 884 A.2d 1262 (2005).[4] Neither the trial court nor the Appellate Division in the present case applied the principles discussed in Jerista.
A number of jurisdictions have held that elevator doors that close on a passenger causing injuries give rise to a res ipsa inference of negligence. See, e.g., *331 Knight v. Otis Elevator Co., 596 F.2d 84, 90-91 (3d Cir. 1979) (permitting res ipsa inference to allow jury to determine whether "the premature closing of the elevator doors does not usually occur unless the defendant has been negligent"); First Nat'l Bank v. Otis Elevator Co., 2 Ariz.App. 80, 406 P.2d 430, 434 (1965) (applying res ipsa because "a jury might well believe plaintiff was hit by the elevator door, and that elevator doors do not hit people in the absence of someone's negligence"); Little Rock Land Co. v. Raper, 245 Ark. 641, 433 S.W.2d 836, 842 (1968) (holding "[t]he application of the doctrine of res ipsa loquitur was not erroneous" against building owner after elevator doors closed on plaintiff); Montgomery Elevator Co. v. Gordon, 619 P.2d 66, 69 (Colo. 1980) (applying res ipsa because "[c]ommon sense and experience tell us that elevators do not usually operate in this manner and that, when they do, negligence is a more probable explanation than other causes" (quoting **147 Gordon v. Westinghouse Elec. Corp., 42 Colo.App. 426, 599 P.2d 953, 955 (1979) ) ); Otis Elevator Co. v. Henderson, 514 A.2d 784, 785 (D.C. 1986) (finding res ipsa applicable despite plaintiff's inability "to identify the specific mechanical failing"); Greet v. Otis Elevator Co., 187 A.2d 896, 897-98 (D.C. 1963) (permitting res ipsa instruction against multiple defendants despite plaintiff "offer[ing] no evidence as to the cause or reason" in elevator-door case); Burns v. Otis Elevator Co., 550 So.2d 21, 22 (Fla. Dist. Ct. App. 1989) ("The doctrine of res ipsa loquitur is particularly applicable in elevator cab cases." (quoting Ferguson v. Westinghouse Elec. Corp., 408 So.2d 659, 660-61 (Fla. Dist. Ct. App. 1981) ) ); Carney v. Otis Elevator Co., 370 Pa.Super. 394, 536 A.2d 804, 806 n.1 (1988) (finding elevator doors crushing plaintiff "an appropriate case for the utilization of res ipsa loquitur").
However, not all jurisdictions apply the res ipsa inference in elevator-door cases. See, e.g., Pratt v. Freese's, Inc., 438 A.2d 901, 904 (Me. 1981) (declining to apply res ipsa because "[t]here must be proof that the accident would not have occurred had the defendants used due care" and "[p]laintiffs introduced no evidence to show that at the time of the accident a defect in the elevator existed which either defendant could have remedied by using due care").
We now hold that, in a negligent-maintenance action against a premises' owner and others who exercise exclusive control, the res ipsa principles enunciated in Jerista apply as strongly to malfunctioning elevator doors as they do to malfunctioning automatic doors. We cannot discern a rational distinction between the two classes of cases -- elevator doors and automatic doors. Just as, based on common knowledge, an automatic door "probably does not close on an innocent patron causing injury unless the premises' owner negligently maintained it," Jerista, 185 N.J. at 197, 883 A.2d 350, the same is true of a malfunctioning elevator door. It may well be that elevator-door accidents will occur at times without anyone being at fault. However, based on "the balance of probabilities," an elevator door that closes onto and injures a passenger is an occurrence bespeaking negligence **148 that falls within the common knowledge of judges and jurors. See id. at 192, 200, 883 A.2d 350.
We therefore join those jurisdictions that apply the res ipsa inference to cases involving malfunctioning elevator doors. In light of this holding, we must determine whether the trial court properly granted summary judgment in favor of defendants in the present case.
IV.
Because the malfunctioning of elevator doors that close on a passenger bespeaks negligence, giving rise to a res ipsa inference, we find that the trial court *332 improvidently granted summary judgment. To gain the benefit of the res ipsa inference, McDaid did not have to present expert testimony pinpointing the cause of the malfunction. Additionally, contrary to the holdings of both the trial court and Appellate Division, McDaid was not required to provide evidence that excluded other possible causes of her injuries to invoke res ipsa. See id. at 192, 883 A.2d 350. The res ipsa doctrine recognizes that the premises owner, or an entity exercising exclusive control over the elevator, is in a superior position to explain what, if anything, went wrong, and to point to the party responsible for any malfunction. See id. at 197, 883 A.2d 350 ("[T]he owner is in the better position to say whether the malfunction was the result of improper inspection or a product defect for which others should be answerable.").
This is not a case where proofs presented by defendants were "so overwhelming that they destroy[ed] any reasonable inference of negligence." See id. at 193, 883 A.2d 350 (citing Brown, 95 N.J. at 289, 471 A.2d 25 ). McDaid asserted that the elevator door knocked her to the ground and twice closed on her, causing serious injuries. Four days after the accident, a city construction code official determined that the elevator's electric eye was in need of repair, and shortly afterward, Bergen Hydraulic's inspection found that the relay contact in the elevator's electric eye was "not functioning properly." The elevator's electric eye is a safety **149 feature designed to prevent an elevator door from closing on a passenger.
The Condominium Association had a duty to ensure that the elevator doors were "maintained in good working order and free of hazards," N.J.A.C. 5:10-12.1(a), and to repair any defect that it knew of or should have discovered, see Hopkins, 132 N.J. at 434, 625 A.2d 1110 ; N.J.A.C. 5:23-12.1 to - 12.12. In addition, Preferred Management's and Bergen Hydraulic's maintenance agreements contractually required them to keep the elevator in good working order and free of hazards. McDaid was not required to show that defendants were on notice of a malfunction to trigger the res ipsa inference.
Defendants contended, based on their experts and other testimony, that McDaid "was not within the plane of the electric eye sufficient to trigger the safety feature," that her neurological conditions were responsible for her injuries, or that the problem with the electric eye's relay contact was a rare occurrence and presumably not detectable or discoverable. However, the evidence viewed in the light most favorable to McDaid indicates that the elevator's malfunction -- not any action on her part -- was the proximate cause of her injuries. At trial, defendants may offer their defenses against the negligence claims, and a jury will be free to accept or reject the res ipsa inference.
At this summary judgment stage, however, the evidence must be viewed in the light most favorable to McDaid. Based on our analysis of prong one of the res ipsa doctrine, the trial court erred in finding that malfunctioning elevator doors that close on a passenger do not bespeak negligence; it was that error that resulted in the court denying McDaid the benefit of a res ipsa inference. Accordingly, we conclude that the trial court improvidently granted summary judgment and dismissed McDaid's complaint.
V.
For the reasons expressed, we reverse the judgment of the Appellate Division affirming the trial court's grant of summary **150 judgment in favor of defendants and dismissing McDaid's complaint. We *333 remand to the trial court for further proceedings consistent with this opinion.[5]
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.

In depositions, Gartenberg claimed that Bergen Hydraulic's representative slowed the closing speed of the elevator doors during a maintenance visit on September 22, 2010, but Bergen's representative denied that he did so or was asked to do so.

The parties disputed a number of facts that the trial court erroneously treated as undisputed. Those disputed facts included: whether Gartenberg communicated McDaid's complaint about the speed of the elevator door to Bergen Hydraulic; whether the speed was adjusted before the accident; and whether the elevator was serviced three weeks before the accident.

McDaid did not pursue a product liability action against the manufacturer, and defendants have not suggested that the elevator itself is inherently defective.

In Huszar, while visiting the Sands Hotel and Casino, the plaintiff was injured when the elevator closed on her and knocked her to the ground. 375 N.J. Super. at 467, 868 A.2d 364. The Appellate Division concluded that the plaintiff was not entitled to the res ipsa inference because "elevator doors are complex instrumentalities requiring plaintiff to present expert testimony to establish a defective mechanism" or negligent maintenance. Id. at 475-76, 868 A.2d 364.

In her petition for certification, McDaid, in passing, raised a challenge to the trial court's striking of a part of her expert report as a net opinion. We find no abuse of discretion by the trial court, which was affirmed by the Appellate Division on this issue.