**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3605-22

ABDULLAH ALHABABI and
NADIA ALHABABI, his wife,

     Plaintiffs-Appellants,

v.

CAESAR'S NEW JERSEY, INC.,
CAESARS ENTERTAINMENT
CORPORATION, CAESAR'S
ENTERTAINMENT RESORT
PROPERTIES, LLC, HARRAH'S
ENTERTAINMENT, INC., and
HARRAH'S ATLANTIC CITY
HOLDING, INC.,

     Defendants,

and

HARRAH'S ATLANTIC CITY
OPERATING COMPANY, LLC,
d/b/a HARRAH RESORT
ATLANTIC CITY,

     Defendant-Respondent.

_____

Submitted January 6, 2025 – Decided March 14, 2025

Before Judges Sabatino, Gummer, and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2107-19.

Law Offices of Steven A. Varano, PC, attorneys for appellants (Joseph P. Slawinski and Justyna Eisenbardt, on the briefs).

Reilly, McDevitt & Henrich, PC, attorneys for respondent (Frederick E. Blakelock and Anthony J. Giordano, on the brief).[1]

PER CURIAM

Plaintiff appeals the trial court's denial of his motions for judgment pursuant to Rule 4:40-1, judgment notwithstanding the verdict ("JNOV") pursuant to Rule 4:40-2, and a new trial pursuant to Rule 4:49-1.

In this personal injury jury trial, plaintiff claimed he was injured when the showerhead at defendant's hotel suddenly detached and fell on his head, causing him to fall and lose consciousness. Plaintiff's theory of the case relied upon the doctrine of res ipsa loquitur, which, if established, would have afforded him a

---

[1] In its answer, defendant Harrah's Atlantic City Operating Company LLC d/b/a Harrah's Resort stated it was improperly named in the complaint as Caesar's New Jersey, Inc., Caesar's Entertainment Corporation, Caesar's Entertainment Resort Properties, LLC, Harrah's Entertainment, Inc., Harrah's Resort Atlantic City, Harrah's Atlantic City Holding, Inc., and Harrah's Atlantic City Operating Company, LLC.

permissive inference that his injuries were caused by defendant's negligence. At the close of evidence, plaintiff moved for judgment pursuant to Rule 4:40-1 as to two of the three res ipsa elements. The trial judge granted the motion with respect to one element—ruling plaintiff had not contributed to the occurrence of the incident causing his injuries—but denied the motion with respect to the other element addressed in the motion—declining to rule defendant maintained exclusive control of the instrumentality that caused plaintiff's injuries and instead allowing the jury to make that determination because "reasonable minds could differ." The jury thereafter returned a verdict for defendant, leading plaintiff to file a JNOV motion and a motion for a new trial, which the trial court denied in the same order.

We conclude the trial judge did not err in denying plaintiff's Rule 4:40-1 motion or JNOV motion, as he did not demonstrate defendant maintained exclusive control of the instrumentality causing his injuries. There was sufficient evidence to defeat plaintiff's claim that the current verdict is a miscarriage of justice, and we conclude a new trial is not warranted. Finally, we find the trial judge did not err in the manner in which she instructed the jury as to res ipsa loquitur, a challenge plaintiff brings for the first time on this

A-3605-22

appeal, and recognize plaintiff consented to the jury instruction several times during trial. Accordingly, we affirm.

I.

On August 11, 2017, plaintiff checked into a two-bedroom suite at defendant's hotel, accompanied by three friends. In the suite, each bedroom had its own adjoining bathroom, and the living room also had its own bathroom. Two of the friends stayed in one of the bedrooms, while the third friend stayed in the living room adjoining the two bedrooms. Plaintiff testified that on August 12, 2017, at approximately 9:00 a.m., he turned on the shower in the bathroom adjacent to the room he was staying in, and let the water run as he shaved and brushed his teeth. During this time, he claims he did not notice anything wrong with the water coming out of the showerhead.

According to plaintiff, the shower was three feet deep, six feet wide, approximately eight or nine feet high, and included a bench. The shower had two showerheads: one on the wall and one on the ceiling. Regarding the showerhead on the ceiling, plaintiff testified he did not touch or adjust it prior to the incident and did not believe he could have done so due to its height.

Plaintiff then entered the shower. He alleges that while he was washing his face, the screen of the ceiling showerhead came loose, fell, and hit him on

4

the right side of the head, causing him to lose his balance and fall backward. He alleges his body then hit the bench, causing him to lose consciousness. He alleges when he regained consciousness, he called for help, and when no one came, he began banging the fallen showerhead screen against the wall. Plaintiff testified one of the three friends in his room entered through the unlocked bathroom door and called security. Security then called EMTs, who placed a cervical collar on plaintiff, placed him on a stretcher, and brought him to the hospital.

Plaintiff filed a personal injury complaint against defendant. An eight-day jury trial subsequently took place.

At trial, both plaintiff and one of his three friends testified no one had used the shower before the incident. Plaintiff also testified he was diagnosed with various head and spine injuries, which the parties disputed at length utilizing various experts at trial. The parties each provided expert testimony as to defendant's liability, with plaintiff's expert testifying "[s]howerheads do not fall off of their installation point all by themselves, unless they were not installed properly," and defendant's expert testifying the showerhead could not have become unscrewed as alleged because, due to its design, the showerhead would have shown obvious signs of a malfunctioning sprayer before falling.

5

Defendant also presented the testimony of its Claims Advocate Manager, who testified that, after a guest checks out of a hotel room, guest room attendants go through the room to "make sure the water's working, that it's not leaking, nothing is clogged, [and] the toilet is flushing." She further testified at the time of the incident, defendant employed quality assurance coordinators who would also inspect the rooms. She testified as part of these inspections the showerheads would have been turned on, inspected, and checked for leaks. She also testified that between December 1, 2016, and August 11, 2017, sixty-four guests made seventy-one reservations for the room in which plaintiff's incident had occurred. She stated that when guests occupy a hotel room, defendant respects their occupancy and does not enter the room, other than for optional maid services.

At the close of evidence, plaintiff moved for judgment pursuant to Rule 4:40-1 as to two of the three elements required for a res ipsa loquitur inference: the instrumentality causing plaintiff's injury was within defendant's exclusive control, and the circumstances surrounding plaintiff's injury were not a result of plaintiff's own voluntary act or negligence. The trial court granted plaintiff's motion for judgment with respect to plaintiff's contribution to his injuries, but denied plaintiff's motion with respect to establishing the showerhead was within

6

defendant's exclusive control. Specifically, the court reasoned the jury could find plaintiff or any of his three friends staying with him accessed the showerhead prior to the incident, and any testimony attesting otherwise was a credibility determination for the jury to decide.

A jury charge conference then took place, followed by closing arguments and the final jury charge. Later that day, the jury returned a verdict in favor of defendant, specifically finding the showerhead was not within defendant's exclusive control. Plaintiff moved for JNOV and a new trial, which the trial court denied. This appeal followed, challenging the orders entered by the trial court and the trial court's jury instruction as to res ipsa loquitur.

## II.

### A. Plaintiff's Rule 4:40-1 Motion and JNOV Motion

We review motions for judgment made pursuant to Rule 4:40-1 and JNOV motions made pursuant to Rule 4:40-2 by applying the same standard as the trial court: "[I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied[.]" Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (alteration in original) (quoting

A-3605-22

Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)); Conforti v. Cnty. of Ocean, 255 N.J. 142, 162 (2023).  Plaintiff argues the trial court erred in failing to grant his motion for judgment pursuant to Rule 4:40-1 establishing the showerhead was within defendant's exclusive control.  Plaintiff asserts his testimony establishing that neither he nor any of his guests used the shower before the incident sufficiently counters the court's conclusion that a jury might reasonably find otherwise.  Specifically, plaintiff alleges defendant has failed to set forth any evidence to the contrary, and the testimony of the Claims Advocate Manager shows defendant's control of the shower before he checked into the room.

Generally, the owner of commercial property must exercise reasonable care in ensuring the safety of all invitees.  Monaco v. Hartz Mt. Corp., 178 N.J. 401, 414 (2004).  "In a premises liability case, the plaintiff has the burden of proving that the property owner's negligence caused her injuries."  McDaid v. Aztec W. Condo. Ass'n, 234 N.J. 130, 142 (2018).  However, when a plaintiff is unable to allege a defendant's specific breach of duty, the doctrine of res ipsa loquitur "allows the factfinder to draw an inference of negligence" against the defendant if they were "in exclusive control of the object or means that caused the accident."  Jerista v. Murray, 185 N.J. 175, 192 (2005).  The factfinder may infer negligence when:   "(a) the occurrence itself ordinarily bespeaks

negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." McDaid, 234 N.J. at 142-43 (quoting Jerista, 185 N.J. at 192).

"The res ipsa doctrine advances the common-sense notion that the party who maintains exclusive control over the object that goes awry and causes injury is in a superior position to explain what went wrong and why." Id. at 143. "Although the ultimate burden of persuasion always remains on the plaintiff, the res ipsa inference gives an incentive to the defendant to dispel the inference by showing that whatever went wrong was not due to [its] negligence or was due to the fault of some other person or the plaintiff." Ibid. "The application of res ipsa loquitur is not precluded when defendant relinquishes control of the instrumentality which causes the accident, provided the instrumentality has not been improperly handled by someone after defendant relinquishes control." Hillas v. Westinghouse Elec. Corp., 120 N.J. Super. 105, 113 (App. Div. 1972). "Res ipsa loquitur is inapplicable where the injured party fails to exclude other possible causes of the injury," id. at 114, but "a plaintiff does not have to exclude alternative possible causes of the accident, 'provided that the circumstances establish "that it is more probable than not that the defendant's negligence was

a proximate cause of the mishap,"'" McDaid, 234 N.J. at 144 (quoting Jerista, 185 N.J. at 192). However, "[b]ecause the res ipsa inference is simply permissive, if the case goes to trial 'the fact finder "is free to accept or reject" it.'" Ibid. (quoting Jerista 185 N.J. at 193).

Plaintiff was not entitled to the legal conclusion that defendant had exercised exclusive control of the showerhead as a matter of law. The Claims Advocate Manager's testimony highlights the persistent frequency in which new guests occupied the subject hotel room, which included access to the showerhead. Plaintiff's own testimony that none of his co-occupant friends used the shower before the incident, combined with corroborative testimony from one of his three friends, does not, as a matter of law, establish the showerhead was not generally accessible or manipulable by the other guests staying with plaintiff. We agree with the trial court that "reasonable minds could differ" as to whether plaintiff, his in-room guests, or any other previous hotel guest could have manipulated the showerhead in such a way to cause the screen to fall. Smith, 225 N.J. at 397. Here, the matter was submitted to a jury, and the jury's reasonable minds did differ from the plaintiff's presentation, specifically rejecting plaintiff's contentions. Accordingly, we affirm the trial judge's denial of plaintiff's Rule 4:40-1 motion and JNOV motion.

B. Plaintiff's Motion for a New Trial

We address motions for a new trial made pursuant to Rule 4:49-1 in the same manner as the trial court: "[W]e consider whether denying a new trial 'would result in a miscarriage of justice shocking the conscience of the court.'" Township of Manalapan v. Gentile, 242 N.J. 295, 305 (2020) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011)). Plaintiff argues no reasonable jury could have found anyone other than defendant had exclusive control of the showerhead, rendering the jury's verdict a miscarriage of justice. We disagree.

The trial court's ruling on a motion for a new trial "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. "A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Hayes v. Delamotte, 231 N.J. 373, 385-86 (2018) (quoting Risko, 206 N.J. at 521). "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of

crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Id. at 386 (quoting Risko, 206 N.J. at 521-22).

Plaintiff did not present sufficient evidence to meet this significant burden in order to overturn the jury's verdict. The jury could have reasonably rejected plaintiff's version of the events leading up to his injury and infer any of the other three guests staying with plaintiff, or any of the dozens of guests who had previously occupied the room in the months leading up to the incident, could have tampered with the showerhead screen in a manner that caused it to fall just at the moment that plaintiff stepped beneath it, despite the water having been running while he shaved and brushed his teeth. Although defendant's Claims Advocate Manager testified hotel employees inspected the hotel rooms in between reservations to ensure various plumbing apparatuses were functional, she further testified hotel guests are left alone by staff while in their rooms, apart from any requested maid service. These facts are sufficient enough to lead a reasonable jury to reject plaintiff's position "that it is more probable than not that the defendant's negligence was a proximate cause of the mishap" and deliver a verdict in defendant's favor. See McDaid, 234 N.J. at 144 (quoting Jerista, 185 N.J. at 192).

A-3605-22

Indeed, even if the evidence did establish defendant's exclusive control, "the res ipsa inference is simply permissive" and "the fact finder 'is free to accept or reject' it." Ibid. (quoting Jerista 185 N.J. at 193); see also Model Jury Charges (Civil), 5.10D, "Res Ipsa Loquitur" (approved October 1990) (even if exclusive control was established and all factors permitting a res ipsa inference were met, "the law permits, but does not require, the jury to infer negligence from the happening of the incident.")

Accordingly, we conclude the jury's finding that defendant was not in exclusive control of the showerhead is supported by credible evidence in the record and its verdict was not a "miscarriage of justice." R. 2:10-1. We affirm the trial court's denial of plaintiff's motion for a new trial.

C. The Jury Charge

Finally, we address plaintiff's final argument, raised for the first time on appeal, that the trial judge's instructions to the jury as to the res ipsa loquitur charge were confusing and clearly capable of producing an unjust result. Again, we disagree.

We review the trial court's jury instruction as to the law de novo. See Fowler v. Akzo Nobel Chem., Inc., 251 N.J. 300, 323 (2022). Except as to plain error or other similar error resulting in an unjust result, "no party may urge as

error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict." R. 1:7-2. If a jury charge is found to be erroneous, we will reverse a jury's verdict only in cases where the erroneous instruction was capable of "producing an unjust result or prejudicing substantial rights." Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (quoting Mandal v. Port Auth. of N.Y. & N.J., 430 N.J. Super. 287, 296 (App. Div. 2013)).

In pertinent part, the trial judge read the res ipsa loquitur model civil jury charge, Model Jury Charges (Civil), 5.10D, as follows:

> In a negligence case, the plaintiff must prove that there was some specific negligent act or omission by the defendant which proximately caused the accident. However, in certain circumstances, the very happening of an accident may be an indication of negligence, thus, the plaintiff may, by providing facts and circumstances, establish negligence by circumstantial evidence.
>
> If the instrumentality causing the injury was in the exclusive control of the defendant and if the circumstances surrounding the happening were of such a nature that in the ordinary course of events, the incident would not have occurred if the entity having control of the instrumentality had used reasonable care under the circumstances, the law permits but does not require the jury to infer negligence from the happening of the incident. Plaintiff's voluntary act or neglect contributing to the occurrence prevents the inference from being drawn. However, the mere fact that plaintiff was present does not defeat the inference. Rather, you

14

must find that the plaintiff's action or negligence was a proximate cause of the occurrence to prevent the inference.

. . . .

In summary, if you find by the greater weight of the evidence that . . . one, the defendant had exclusive control of the instrumentality causing the occurrence, and two, that the circumstances were such that in the ordinary course of events, the incident could not have occurred if the defendant had exercised reasonable care, then you may infer that the defendant was negligent.

After reading the charges, the trial court requested a sidebar to discuss the adequacy of the charge with counsel:

THE COURT: I want to put on the record right now that when I was reading the res ipsa charge, it gives three factors and I specifically did not read into the record the [factor wherein the inference is defeated by plaintiff's voluntary act or negligence contributing to his injury].

[PLAINTIFF'S COUNSEL]: No. Right.

[DEFENDANT'S COUNSEL]: I never even heard it.

THE COURT: Right. Any other exceptions? Go ahead.

[PLAINTIFF'S COUNSEL]: Just a reminder, but I think you—in that same charge . . . the paragraph— involuntary act ordinarily contributing to the occurrence, that—that whole paragraph should be out.

15

A-3605-22

THE COURT:  The contributory negligence.  How—how—how about I give them an instruction?

[PLAINTIFF'S COUNSEL]:  I think if you told them that that's not an issue, because that's what I told them in my summation, that that's not for them to decide.

THE COURT:  That's what I think need to give them an instruction on that. [sic]

. . . .

[PLAINTIFF'S COUNSEL]:  Maybe just explain to them that it's normally a factor.  I mean, I put that out there anyway.  But that in this case, that's already been decided.

THE COURT:  How about an instruction with regard to plaintiff's negligence by conduct or omission is not a factor to be considered by you?

[DEFENSE COUNSEL]:  That's okay.

THE COURT:  Okay.  Plaintiff?

[PLAINTIFF'S COUNSEL]:  They didn't—you didn't read to them the [prong regarding a plaintiff's own voluntary act or negligence] right?
THE COURT:  I did not read it.  I skipped right over.

[PLAINTIFF'S COUNSEL]:  Then that's fine.

The court then ended the sidebar and addressed the jury:

THE COURT:  Okay.  One more instruction, folks.  Any instruction with regard to plaintiff's negligence by conduct or omission is not a factor to be considered by

16

A-3605-22

you.  Okay.  Anything further on behalf of the plaintiffs?

[PLAINTIFF'S COUNSEL]:  No, Your Honor.

THE COURT:  Defense?

[DEFENDANT'S COUNSEL]:  No, Your Honor.

The jury was then dismissed to deliberate, but soon after returned with a question requesting "further verification . . . on number one of jury verdict questionnaire," which asked whether plaintiff "has established by a preponderance of the evidence that defendant . . . had exclusive control of the instrumentality that caused the injury."  To remedy this issue, the court suggested re-reading the res ipsa model charge once more, to which plaintiff's counsel consented.

Plaintiff now challenges these instructions the trial judge gave the jury. However, counsel not only failed to object to these instructions, but explicitly consented to them.  When a party fails to object to the jury instructions at the time they are given, "there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case," and therefore the jury instructions are reviewed for plain error.  Willner v. Vertical Realty, Inc., 235 N.J. 65, 79 (2018) (quoting State v. Montalvo, 229 N.J. 300, 320 (2017)). Pursuant to this standard, we will disregard any error or omission "unless it is

17

of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. Plaintiff fails to meet that standard.

Instructions given in accordance with the model jury charge, or which closely track the model jury charge, are generally presumed not erroneous. See Mogull v. CB Com. Real Estate Grp., Inc., 162 N.J. 449, 466 (2000). The instructions the trial court gave closely track the model charge, except the court appropriately tailored the charge to reflect its order granting plaintiff's motion for judgment as to one element of the res ipsa inference. Although the court mentioned the third element in its general overview of negligence and the res ipsa inference, it omitted that element from its summary of the jury charge, the verdict sheet, and the follow-up instruction to the jury—to which both parties explicitly agreed—making it clear the jury was not to consider that element. On that record, we do not perceive an error possessing a "clear capacity to bring about an unjust result." R. 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3605-22